[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————————

No. 22-13741

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

STEVEN MICHAEL CENEPHAT,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:20-cr-20230-CMA-1

————————————————

Before Jill Pryor, Tjoflat, and Anderson, Circuit Judges.

PER CURIAM:

Steven Cenephat appeals his conviction and sentence for knowingly possessing a firearm as a felon in violation of 18 U.S.C. § 922(g)(1). He argues that the District Court erred by (1) admitting other bad acts evidence relating to a drive-by shooting and his prior convictions for illegally possessing firearms; (2) calculating his offense levels under the guideline for attempted murder; and (3) applying a sentencing enhancement for reckless flight from a law enforcement officer. We affirm.

## I.

In February 2020, Miami police officers responded to the sound of gunshots while on patrol. As the officers approached the source of the noise, they saw a silver Pontiac Grand Prix speeding in the opposite direction. A high-speed chase ensued. The Grand Prix fled erratically, causing accidents, driving through red lights and stop signs, and stopping only when the car finally crashed between a fence and a light post. Police did not see anyone enter or exit the car. They found Cenephat in the back, with another person in the driver's seat. There were firearms and ammunition on the car's rear floorboard. The car belonged to Cenephat's mother.

Other officers responded to the scene of the gunshots, a nearby apartment complex. They found an injured man who had been shot in the head, requiring urgent medical care. Investigators recovered spent cartridge casings that matched the firearms located

in the Grand Prix. And they obtained video surveillance footage from the apartment complex that seemed to show gunshots being fired from the back of a four-door sedan matching the appearance of the Grand Prix. Later testing revealed gunshot residue on Cenephat's left hand.

A grand jury indicted Cenephat for possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). Before trial, the Government filed notice of its intent to offer prior bad acts evidence under Federal Rule of Evidence 404(b). It sought to introduce evidence of (1) Cenephat's 2011 and 2014 felon-in-possession convictions to show that his alleged possession "was knowing and not the result of a mistake or accident" and (2) Cenephat's participation in a drive-by shooting shortly before he was arrested, which the Government suggested was "necessary to complete the story of the crime."

Cenephat moved to exclude both forms of evidence under Federal Rules of Evidence 404(b) and 403. He argued that the prior convictions were not probative on account of their temporal remoteness and were overly prejudicial in that they "paint[ed] Mr. Cenephat as a violent and armed individual." He also argued that the Government should have agreed to merely stipulate that Cenephat had a prior felony conviction. And he stated that the drive-by evidence was extrinsic to his felon-in-possession charge and would be extremely inflammatory because of its violent nature. He offered to stipulate that the officers who arrested him were responding to "shots fired."

The District Court addressed these arguments at a pre-trial hearing.  The Court ruled that the evidence about the drive-by shooting would be admissible because it was inextricably intertwined with the charged offense.  The Court also ruled that Cenephat's prior convictions would be admissible because he placed his intent at issue by pleading not guilty, the fact that they were convictions was sufficient proof that he committed the acts, and the risk of prejudice did not outweigh their probative value.

At trial, the Government highlighted Cenephat's involvement in the drive-by, stating that "the evidence in this case will show that the Defendant committed a drive-by shooting, but that is not what you are here to decide today."  The Government also referred to Cenephat's prior felon-in-possession convictions, stating that they did "not mean that it's more likely that he committed the offense charged today" but that the jury was "allowed to consider those prior firearm convictions when deciding whether the Defendant had the intention to possess" the charged weapons.  At the close of trial, the District Court provided a limiting instruction to the jury regarding the prior acts evidence.  The jury found Cenephat guilty.

At sentencing, the District Court noted that the Sentencing Guidelines "recommend[ed] a sentence of 324 to 405 months' imprisonment; however, the statutory maximum is 120 months."  The Court denied Cenephat's objection to a reckless flight enhancement, stating that Cenephat aided or abetted the reckless flight because he was "in the car with the driver" and surrounded

by guns, ammunition, and spent bullet casings.  The Court also denied Cenephat's objection to having his offense levels calculated under the attempted murder guideline, stating that Cenephat aided the drive-by shooting, allowed his mother's car to be used, was present at the shooting, and knowingly possessed guns and ammunition used in the shooting.  After weighing the 18 U.S.C. § 3553 factors, the Court sentenced Cenephat to the statutory maximum 120 months in prison.  At the Government's request, the Court added that, "in the event that [Cenephat's] objections should have been sustained, the guideline range would still have exceeded the statutory maximum and the sentence that I have imposed . . . is sufficient and not greater than necessary."

## II.

Cenephat appeals the District Court's decisions to admit evidence regarding prior acts: (1) the drive-by shooting and (2) his earlier felon-in-possession convictions.  We review a district court's evidentiary rulings for an abuse of discretion.  *United States v. Novaton*, 271 F.3d 968, 1005 (11th Cir. 2001).  "A district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making its determination, or makes clearly erroneous factual findings."  *United States v. Giron*, 15 F.4th 1343, 1345 (11th Cir. 2021).

We will not reverse based on harmless error.  *United States v. Barton*, 909 F.3d 1323, 1337 (11th Cir. 2018).  Thus, reversal is not warranted "if the purported error had no substantial influence on the outcome and sufficient evidence uninfected by error supports

the verdict." *United States v. Fortenberry*, 971 F.2d 717, 722 (11th Cir. 1992). The government bears the burden of establishing harmlessness. *See United States v. Mathenia*, 409 F.3d 1289, 1292 (11th Cir. 2005).

### A

Evidence of uncharged or past crimes "is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id*. 404(b)(2). The evidence must satisfy a three-part test: "(1) it must be relevant to an issue other than defendant's character; (2) there must be sufficient proof to enable a jury to find by a preponderance of the evidence that the defendant committed the act(s) in question; and (3) . . . the evidence must satisfy Rule 403." *United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007). The government must also offer prior notice of its intent to present the evidence, including an explanation of its permitted purpose. Fed. R. Evid. 404(b)(3).

But Rule 404 does not apply to evidence that is intrinsic to the charged crime. *United States v. Dixon*, 901 F.3d 1322, 1344–45 (11th Cir. 2018). Evidence is intrinsic if it "arose out of the same transaction or series of transactions as the charged offense, is necessary to complete the story of the crime, or is inextricably

intertwined with the evidence regarding the charged offense." *Id.* (quotations omitted).

Here, the District Court held that Rule 404 did not apply to the drive-by evidence because it was "inextricably intertwined" with the charged offense. In other words, details of the drive-by could be presented as part of the prosecution's story of how Cenephat unlawfully possessed firearms. Cenephat does not argue that Rule 404 applies.

Rather, Cenephat objects on Rule 403 grounds. Rule 403 permits district courts to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. By its terms, the rule creates a "strong presumption in favor of admissibility." *United States v. Church*, 955 F.2d 688, 703 (11th Cir. 1992). "The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997). That different ground is "commonly, though not necessarily, an emotional one." *Id.* But Rule 403 imposes "no requirement that the government choose the least prejudicial method of proving its case." *United States v. Dixon*, 698 F.2d 445, 446 (11th Cir. 1983).

Here, the District Court did not err in admitting evidence that Cenephat committed a drive-by shooting shortly before his arrest. Viewed in the light most favorable to admission, this evidence was not substantially more prejudicial than probative. The

Government had to prove that Cenephat possessed firearms, and the evidence tended to show that: (1) a drive-by shooting occurred with gunfire coming from the back driver's side window of a car; (2) Cenephat was arrested sitting in the back driver's side seat of the car; (3) there was only one other person in the car when Cenephat was arrested, the driver; (4) no one exited the car before or after the police stopped it; (5) cartridge casings found at the scene of the shooting and in the car matched each other and the firearms that were in the car; and (6) Cenephat had gunshot residue on his left hand. All of these points, if proven, would help to persuade the jury that Cenephat knowingly possessed the firearms.

True, evidence of an uncharged drive-by shooting has prejudicial potential. But we have routinely permitted intrinsic evidence of similarly violent acts in other prosecutions for illegal firearm possession. *See, e.g.*, *Fortenberry*, 971 F.2d at 721 (allowing evidence of an uncharged double murder to establish the defendant's possession of a firearm). And the Government here limited the evidence's prejudicial impact by omitting any mention of the injured victim from its case to the jury.

Nevertheless, Cenephat argues that the Court should have merely accepted his offer to stipulate that police were responding to "shots fired" when they encountered him. But that stipulation is not nearly as probative as the evidence he seeks to exclude. For all the reasons described above, details regarding the drive-by shooting have a much greater tendency to prove that Cenephat

possessed firearms as alleged.  We conclude that the District Court did not abuse its discretion by admitting the drive-by evidence.

B

Cenephat also objects to the Government's use of his prior felon-in-possession convictions to prove intent under Rule 404(b). This Court has held that "[a] defendant who enters a not guilty plea makes intent a material issue which . . . [the government] may prove by qualifying Rule 404(b) evidence." *United States v. Zapata*, 139 F.3d 1355, 1358 (11th Cir. 1998).  Alternatively, defendants can remove intent as an issue and prevent the introduction of Rule 404(b) evidence by stipulating that they had the required intent. *United States v. Costa*, 947 F.2d 919, 925 (11th Cir. 1991).

"[W]here the state of mind required for the charged and extrinsic offenses is the same, the first prong of the Rule 404(b) test is satisfied." *Edouard*, 485 F.3d at 1345.  Thus, we have permitted evidence of prior felon-in-possession offenses to be used to prove later charges, reasoning that there is a "logical connection between a convicted felon's knowing possession of a firearm at one time and his knowledge that a firearm is present at a subsequent time." *United States v. Jernigan*, 341 F.3d 1273, 1281–82 (11th Cir. 2003), *abrogated in part on other grounds by Rehaif v. United States*, 588 U.S. 225 (2019); *see also United States v. Gomez*, 927 F.2d 1530, 1534 (11th Cir. 1991) (reasoning that prior firearm convictions were admissible to show that the defendant "was aware of the dangers of and law relating to concealed weapons and rebut [his] claim that the gun was

for an innocent purpose and its presence was mere accident or co-incidence").

Cenephat argues that our precedent has been abrogated by more recent changes to Rule 404.  The rule was amended in 2020 to impose additional notice requirements in criminal prosecutions. Fed. R. Evid. 404 advisory committee's note to 2020 amendment. Before the amendment, prosecutors needed to provide notice only of the "general nature" of the evidence they sought to introduce. *Id.*  Now, Rule 404(b) requires that prosecutors articulate both a non-propensity purpose and the reasoning that supports their purpose.  Fed. R. Evid. 404(b)(3).

Here, the Government provided the required notice, but Cenephat argues that the rule's text also prompts a change in how our courts analyze this kind of evidence.  But there is nothing in either the rule's text or the advisory committee notes to suggest that the amendment did anything more than require better notice to courts and criminal defendants.  At any rate, the risk of prejudice is more properly assessed under the framework of Rule 403.

On that point, Cenephat argues that his prior convictions lack probative value because of their age.  To determine the probative value of prior bad acts, we have considered "whether it appeared at the commencement of trial that the defendant would contest the issue of intent, the overall similarity of the charged and extrinsic offenses, and the temporal proximity between the charged and extrinsic offenses." *Edouard*, 485 F.3d at 1345.  But "decisions as to impermissible remoteness are so fact-specific that

a generally applicable litmus test would be of dubious value." *United States v. Pollock*, 926 F.2d 1044, 1048 (11th Cir. 1991). Thus, we have held that 15-year-old convictions were not too remote but also stated that the remoteness of 4-year-old convictions "depleted this evidence of any force of probity whatsoever." *United States v. Lampley*, 68 F.3d 1296, 1300 (11th Cir. 1995); *United States v. Dothard*, 666 F.2d 498, 504 (11th Cir. 1982).

Cenephat's prior convictions date back to 2011 and 2014, roughly nine and seven years before the instant offense. Our cases make clear that neither age is inherently disqualifying. And we see no reason to conclude that the convictions were too remote under the circumstances here. In fact, Cenephat committed the instant offense *less than a year* after he completed his sentence for the 2014 conviction.

Cenephat also argues that the prior convictions are too dissimilar to the instant offense to have significant probative value. He says that the earlier cases involved different guns or ammunition and that neither involved any accompanying violent conduct. But these distinctions are superficial. The offenses share much more in common: each offense involved the unlawful possession of weapons that Cenephat *knew* he should not have.

Somewhat more compelling is Cenephat's argument regarding the evidence's prejudicial potential. He reasons that the jury might have been tempted to convict him just because he was caught twice before. This risk of prejudice is frequently a concern in prosecutions using extrinsic evidence. *See United States v. Nerey*,

877 F.3d 956, 974 (11th Cir. 2017) (noting that this evidence "risks a jury's convicting the defendant for the extrinsic offense or conduct rather than the charged one").  Nevertheless, given the high probative value of this evidence, decisions regarding its admissibility tend to fall soundly within the district courts' discretion.  *See United States v. Ramirez*, 426 F.3d 1344, 1354 (11th Cir. 2005).  And the Court here provided a limiting instruction against any propensity use of the prior acts.  We cannot say that the District Court abused its discretion in admitting the prior convictions below.

### III.

On appeal from sentencing, Cenephat objects to the District Court's application of the guideline for attempted murder.  We review a district court's fact findings for clear error and its interpretation of the Sentencing Guidelines *de novo*.  *United States v. Massey*, 443 F.3d 814, 818 (11th Cir. 2006); *United States v. Revel*, 971 F.2d 656, 660 (11th Cir. 1992).  To find clear error, we "must be left with a definite and firm conviction that a mistake has been committed." *United States v. Rodriguez-Lopez*, 363 F.3d 1134, 1137 (11th Cir. 2004) (quotation omitted).

A district court may rely on any statements in the presentence investigation report ("PSI") that the defendant did not object to "with specificity and clarity."  *United States v. Bennett*, 472 F.3d 825, 832–33 (11th Cir. 2006).  However, "[w]here a defendant objects to the factual basis of his sentence, the government has the burden of establishing the disputed fact."  *Id.* at 832.  In district court, the government must establish a sentencing enhancement

by a preponderance of reliable evidence. *United States v. Askew*, 193 F.3d 1181, 1183 (11th Cir. 1999).

Typically, the base offense level for a defendant convicted of unlawful possession of a firearm is calculated under § 2K2.1. U.S.S.G. § 2K2.1. But a cross-reference to § 2X1.1 applies if the defendant used or possessed the firearm in connection with another offense. *Id.* § 2K2.1(c)(1)(A). That provision itself cross-references other guidelines that cover more specific attempt, solicitation, or conspiracy offenses. *Id.* § 2X1.1(c)(1).

Attempted murder is covered by § 2A2.1. *Id.* § 2A2.1. The base offense level thereunder is 33 if the completed offense would have been first-degree murder. *Id.* § 2A2.1(a)(1)–(2). And it adds two levels if the victim suffered a serious bodily injury. *Id.* § 2A2.1(b)(1)(B). First-degree murder includes any "willful, deliberate, malicious, and premeditated killing." *United States v. Mock*, 523 F.3d 1299, 1303 (11th Cir. 2008) (quoting 18 U.S.C. § 1111(a)). Attempted murder occurs when a person (1) intends to kill someone and (2) "complete[s] a substantial step towards that goal." *Alvarado-Linares v. United States*, 44 F.4th 1334, 1346 (11th Cir. 2022).

Here, the trial evidence and uncontested PSI statements tended to show that Cenephat was an active participant in an earlier drive-by shooting that resulted in serious bodily injury. Cenephat was found with firearms and ammunition in the backseat of his mother's Grand Prix directly after it fled the scene of the shooting. The firearms were loaded, and one had been modified for faster reloading. Forensics matched the bullets found at the

scene of the drive-by with the casings and firearms found in the car. Cenephat's hand tested positive for gunshot residue.

Based on this evidence, the District Court could find that Cenephat intended to commit murder and attempted to do so. Therefore, the Court did not clearly err in finding that Cenephat possessed firearms in connection with an attempted murder.

## IV.

Cenephat also objects to the District Court's application of a sentencing enhancement for reckless endangerment during flight. "[W]hen a defendant fails to raise an argument before the district court, we review only for plain error." *United States v. Johnson*, 694 F.3d 1192, 1195 (11th Cir. 2012). Plain error occurs where there is: "(1) an error (2) that is plain and (3) that has affected the defendant's substantial rights; and . . . (4) the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *United States v. Madden*, 733 F.3d 1314, 1320 (11th Cir. 2013) (quotation omitted). For an error to be plain, the issue must be specifically resolved by the operative text or by precedent from this Court or the Supreme Court. *United States v. Lejarde-Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003).

The Sentencing Guidelines impose a two-level sentencing enhancement "[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." U.S.S.G. § 3C1.2. The commentary to the reckless flight enhancement provides that, "[u]nder this section, the defendant is accountable for

the defendant's own conduct and for conduct that the defendant aided or abetted, counseled, commanded, induced, procured, or willfully caused." U.S.S.G. § 3C1.2 comment. (n.5).

In a line of cases interpreting this language, we have held that "a defendant cannot be held responsible for another's conduct under § 3C1.2 without some form of direct or active participation." *United States v. Dougherty*, 754 F.3d 1353, 1360 (11th Cir. 2014) (citing *United States v. Cook*, 181 F.3d 1232, 1235 (11th Cir. 1999)). In other words, mere foreseeability is not enough. *Id.* And the district court must make "a specific finding that the defendant actively caused or procured the reckless behavior at issue." *Id.* (quotation omitted).

We review for plain error Cenephat's arguments raised for the first time on appeal. He argues that a recent decision by this Court rendered the guidelines commentary irrelevant when a guideline is unambiguous on its face. *See United States v. Dupree*, 57 F.4th 1269 (11th Cir. 2023) (en banc). He also argues that the District Court failed to make a sufficient finding that he actively participated in the reckless driving.

In *United States v. Dupree*, we held that guidelines commentary may only be used to construe a guideline if, having exhausted all the traditional rules of statutory interpretation, the guideline's main text is ambiguous. *Id.* at 1273–77. Cenephat notes that § 3C1.2 itself addresses only those risks that "the *defendant* recklessly created . . . in the course of fleeing from a law enforcement officer." *See* U.S.S.G. § 3C1.2 (emphasis added). He argues that the

16                    Opinion of the Court                    22-13741

guidelines commentary cannot modify the guideline's plain meaning to impose an enhancement for merely aiding and abetting *another's* conduct.

But Cenephat forgets § 1B1.3, which otherwise directs that Chapter Three enhancements, like that of § 3C1.2, "shall be determined" based on "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant." *Id.* § 1B1.3(a)(1). In fact, "in the case of a jointly undertaken criminal activity," § 1B1.3 applies even more broadly to some conduct by others that is "*reasonably foreseeable* in connection with that criminal activity." *Id.* § 1B1.3(a)(1)(B) (emphasis added).

Indeed, our pre-*Dupree* holdings acknowledged this "conflict" between § 1B1.3 and the commentary to § 3C1.2. *See Cook*, 181 F.3d at 1234. But we reasoned that the former provided only a general rule because it applies "*[u]nless otherwise specified*," so the latter's more specific language should prevail. *Id.* at 1235–36.

It is unclear whether our previous interpretations of § 3C1.2 survived *Dupree*. However, as the Government notes, our resolution of this issue would not affect the outcome here. Without the two-level enhancement, Cenephat's total offense level and criminal history would have yielded a guidelines range of 262 to 327 months.[1] But the statutory maximum sentence that Cenephat

---

[1] Cenephat's base offense level would have been 33 under the attempted murder guideline. U.S.S.G. § 2A2.1(a)(1). A two-level increase would apply because the offense resulted in serious bodily injury. *Id.* § 2A2.1(b)(1)(B).

faced was 120 months, so his actual guideline sentence would remain the same. *See* U.S.S.G. § 5G1.1(a).

At sentencing, the Government requested that the District Court make a *Keene* finding. *See United States v. Keene*, 470 F.3d 1347 (11th Cir. 2006). Under *Keene*, we will not vacate a defendant's sentence if the district court states that its decision as to a guidelines issue would not have affected the sentence imposed, provided that sentence is reasonable. *Id.* at 1348–49. The Government here invoked *Keene* in asking the District Court to state that it "still would have applied a 120-month sentence" even if Cenephat had prevailed on his sentencing objections. The District Court itself noted that, "in the event that the objections should have been sustained, the guideline range would still have exceeded the statutory maximum," and it stated that the 120-month sentence was "sufficient and not greater than necessary."[2]

Finally, the District Court's sentence was not "outside the range of reasonable sentences dictated by the facts of the case." *See*

---

Combined with Cenephat's criminal history category of V, the guidelines yield a sentencing range of 262 to 327 months.

[2] At sentencing, the District Court and the parties apparently assumed that Cenephat's guidelines range would remain above the statutory maximum even if he succeeded on *both* his sentencing objections. That assumption may have resulted from a typographical error in the PSI. But that error would only have affected the outcome if Cenephat succeeded in challenging the applicability of the attempted murder guidelines. Because we hold that those guidelines *are* applicable, his corrected guidelines range would remain well above the statutory maximum.

*United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (quotation omitted).  The Court appropriately weighed the 18 U.S.C. § 3553(a) factors and found Cenephat's conduct to be "abhorrent and heinous."  Therefore, even if the District Court erred in applying the reckless endangerment enhancement, the error was harmless.

**AFFIRMED.**