[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-13012

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee.

*versus*

JAVONTE KEYON WHITFIELD,

Defendant-Appellant,

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 2:22-cr-00011-SPC-KCD-1

_____

Before LAGOA, ED CARNES, and WILSON, Circuit Judges.

PER CURIAM:

Shortly before 1:30 a.m. on May 14, 2021, police responded to a "ShotSpotter"[1] alert that had detected gunshots near a house in Fort Myers, Florida. After police arrived at the house, they searched it. They found under a bed a loaded rifle, which turned out to have only one fingerprint on it, that of Javonte Whitfield, a felon. It wasn't his house but the fingerprint on the rifle led to Whitfield being tried for knowingly possessing a firearm and ammunition as a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). A jury convicted him of that charge.

Whitfield contends that the district court committed four reversible errors during his trial. He argues that the court plainly erred when it: (1) allowed the government to introduce his prior guilty plea and state conviction for unlawful possession of a concealed firearm; and (2) admitted into evidence what he describes as irrelevant blood evidence found during the search of the house that contained the rifle. He also asserts that the court erroneously: (3) denied him a judgment of acquittal; and (4) allowed the government during closing argument to refer to facts that were not in evidence. Finally, he argues that the cumulation of those asserted

---

[1] ShotSpotter is a gunshot technology that alerts police when it detects gunshots being fired within the city limits. It records the geographic coordinates of the gunshots it detects and forwards them to police. Doc. 149 at 170.

errors requires reversal, even if any particular one standing alone does not.

Because none of Whitfield's arguments has merit, we affirm.

## I.  BACKGROUND

### A.  PRIOR CONVICTION AND GUILTY PLEA EVIDENCE

Before trial, the government filed a motion *in limine*, seeking to introduce evidence that, in 2016, Whitfield pleaded guilty in Florida state court to knowingly possessing a concealed firearm unlawfully.  Whitfield filed a motion *in limine*, seeking to prevent that evidence's admission; he contended that evidence of his prior conviction was unnecessary because the parties intended to stipulate to his status as a convicted felon.  The court denied Whitfield's motion, thereby permitting the government to introduce evidence of that 2018 state conviction.[2]

Before the government introduced that evidence, the court gave a limiting instruction, telling the jurors that they "must not consider this evidence to decide if the defendant engaged in the activity alleged in the indictment," but that they could consider the evidence to determine whether he "had the state of mind or intent necessary to commit the crime charged in the indictment."  That

---

[2] Although Whitfield pleaded guilty in 2016 to that Florida crime, the adjudication of it was withheld until 2018.  Because a defendant is technically not convicted until he is adjudicated guilty, Whitfield's conviction occurred in 2018.

charged state of mind or intent was knowledge that he had possessed the firearm and knowledge that his possession was illegal.

The government then called as a witness a special agent from a Florida office of the Bureau of Alcohol, Tobacco, Firearms, and Explosives. The prosecutor asked the agent two questions about Whitfield's prior crime: (1) whether Whitfield had in 2016 "commit[ted] the Florida crime of knowingly and unlawfully carrying a concealed firearm"; and (2) whether "Whitfield later plead[ed] guilty to committing that crime[.]" The agent responded to both questions, "Yes."

At the time it was offered and admitted, Whitfield did not object to that evidence. And he did not challenge it in his first motion for acquittal. And he did not challenge it in his second motion for acquittal either.

## B. BLOOD EVIDENCE

During trial, Whitfield's counsel moved *in limine* to exclude evidence of guns and drugs found during the search of the house that were unrelated to the charges against him. While discussing the scope of that motion with the court, his counsel stated that she did not "mind the blood [evidence]" that the government planned to introduce. The government stated that its witnesses would not testify about other guns or drugs found during the search but that they would testify about the blood that was found during the search — to which Whitfield's counsel responded, "Okay." The government then called multiple witnesses who testified about the blood found at the house during the search.

23-13012                Opinion of the Court                5

### C. EVIDENCE OF WHITFIELD'S FINGERPRINT ON THE FIREARM

The government also presented evidence about the rifle found during the search. The crime scene technician testified that she found only one fingerprint on the rifle, and it was on the metallic shaft of the weapon, meaning on the "bayonet." A crime laboratory analyst testified that print matched Whitfield's.

The crime scene technician also testified that she found the rifle under a bed in one of the two bedrooms. She testified, and the government presented photographs to corroborate, that the area under the bed was very dusty but the rifle itself had no dust on it, which indicated that the rifle had recently been placed under the bed shortly before the police found it. Here are those photographs.



Gov't Ex. 19B (showing the dusty floor underneath the bed as it appeared when the police found the rifle).



Gov't Ex. 34 (showing the loaded, dust-free rifle immediately after a crime scene technician removed it from under the bed).

The two photographs are relevant because they refute Whitfield's argument that he may have possessed the rifle only before he became a convicted felon in 2018, which would mean his possession of it was not illegal. The search was in 2021, and the fact that the rifle was clean and dust free in the dusty area under the bed, enabled the prosecutor to argue: "You have a dusty floor underneath that bed and a clean, dust-free gun. What does that tell you? Sure doesn't look like the gun has been there all that long."

### D.  MOTIONS FOR ACQUITTAL

At the close of the government's evidence, Whitfield moved for judgment of acquittal, arguing that the government failed to present sufficient evidence to prove that he had possessed the firearm. At the close of all evidence, he renewed that motion. The court reserved ruling on those motions until after the jury returned its verdict.

23-13012                 Opinion of the Court                      7

### E. THE GOVERNMENT'S CLOSING ARGUMENT

The court instructed the jury that the attorneys' closing arguments were not to be considered evidence or instructions on the law.

During the government's closing argument, the prosecutor sought to head off Whitfield's suggestion that his one fingerprint (his left thumbprint) on the rifle could have resulted from accidentally touching it without actually possessing the firearm. The prosecutor argued: "[N]ot only is Javonte Whitfield's unique left thumbprint on the bayonet of the firearm with evidence of pressure being applied, but it is in a location consistent with where you would expect someone's left thumbprint to press." Whitfield objected to that argument because he thought it consisted of "[f]acts not in evidence." The court overruled that objection.

The prosecutor then had another member of the prosecution team stand up in view of the jury and hold the rifle. He pointed out that the location of the other prosecutor's left thumb was "exactly where [Whitfield's] left thumbprint print was" found on the rifle. He went on to argue: "[F]or a right-handed-dominant person like Mr. Whitfield, we've seen him writing with his right hand the entire trial, you're going to be holding that gun with the right and engaging with your left. It's exactly where you would expect it to be." Whitfield objected again, asserting the prosecutor's statement consisted of facts not in evidence. The court sustained that objection, later clarifying for the jury that it had

sustained the objection as to the prosecutor's "last comment." The prosecutor continued with his closing argument.

### F. THE VERDICT AND SENTENCE

The jury found Whitfield guilty of possession of a firearm as a convicted felon. The court denied Whitfield's motion for a judgment of acquittal. At a later sentence hearing, the court sentenced Whitfield to 57 months imprisonment to be followed by 3 years of supervised release. He challenges his conviction but not his sentence.

## II.  DISCUSSION

### A. ADMISSION OF THE PRIOR CONVICTION AND GUILTY PLEA EVIDENCE

Whitfield contends that the district court both abused its discretion and plainly erred when it allowed the government to present evidence of his 2016 guilty plea and 2018 conviction in state court for knowingly possessing a concealed firearm unlawfully. His position is that the prejudicial effect of that evidence substantially outweighed its probative value under Federal Rule of Evidence 404(b). It did, he says, because he had stipulated that he was a convicted felon in 2021 when he is alleged to have possessed the rifle involved in this case. He stipulated that in an attempt to prevent the jury from learning that he had previously committed the same type of crime he was charged with committing in this case.

We ordinarily review for abuse of discretion a district court's decision to admit evidence of a defendant's other crimes. *United*

*States v. Ellisor*, 522 F.3d 1255, 1267 (11th Cir. 2008). But because Whitfield did not object at trial to the testimony about his previous state conviction and failed to raise this issue in either of his motions for judgment of acquittal, we review the admission of that evidence only for plain error. *See United States v. Chilcote*, 724 F.2d 1498, 1503 (11th Cir. 1984); *see also Johnson v. United States*, 520 U.S. 461, 466–67 (1997).

Under the plain error standard, Whitfield "must show that: (1) an error occurred; (2) the error was plain; (3) it affected [his] substantial rights; and (4) it seriously affected the fairness of the judicial proceedings." *United States v. Rodriguez*, 627 F.3d 1372, 1380 (11th Cir. 2010) (quotation marks omitted). "Only if all four of those showings are made does a court of appeals have any authority to correct an error that was not preserved by a timely objection in the district court." *Id.*

Whitfield has not shown plain error. That's because the evidence of his previous conviction and admission of guilt is admissible under Rule 404(b), notwithstanding his stipulation that he was a convicted felon when he was charged with having possessed the firearm in this case. Under that rule, evidence of a prior crime is admissible if: (1) it is relevant to an issue other than the defendant's character; (2) there is sufficient proof that a jury could find by a preponderance of the evidence that the defendant committed it; and (3) the probative value of the evidence is not substantially outweighed by undue prejudice. *United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007). Rule 404(b) allows the admission of

evidence of a defendant's prior crime to prove elements such as knowledge and intent.  Fed. R. Evid. 404(b)(2). All three of Rule 404(b)'s requirements are satisfied for admission of the evidence of Whitfield's prior crime.

As to the first requirement, the fact that he had been convicted in 2018 for knowingly and unlawfully possessing a concealed firearm is relevant to whether he knowingly possessed a firearm as a felon in 2021.  That's because knowing possession is an element both of his prior crime and of the charged crime.  *See United States v. Deleveaux*, 205 F.3d 1292, 1297 (11th Cir. 2000) (explaining that to prove a violation of § 922(g)(1), the government must show "the defendant was in knowing possession of a firearm"); Fla. Stat. § 790.01 (Florida concealed firearm statute); *see also* Doc. 150 at 114 (government introducing the evidence, without objection, that in 2016 Whitfield "commit[ted] the Florida crime of knowingly and unlawfully carrying a concealed firearm . . . [and] later plead[ed] guilty to committing that crime"); *Jackson v. State*, 289 So.3d 967, 969 (Fla. 4th DCA 2020) (quoting *In re Standard Jury Instructions in Criminal Cases – Report 2017-10*, 253 So.3d 1040, 1041 (Fla. 2018), in which the Supreme Court of Florida instructs that, to return a guilty verdict under Fla. Stat. § 790.01, a jury must find, as one of the elements of the crime, that the defendant "knowingly carried on or about his person a firearm") (bracketed words adopted). Whitfield's previous crime and the charged crime both required a jury to find that he knowingly possessed a firearm.

"[W]here the state of mind required for the charged and extrinsic offenses is the same, the first prong of the Rule 404(b) test is satisfied." *Edouard*, 485 F.3d at 1345. As we've held, that means evidence that a defendant was previously convicted of knowingly possessing of a firearm unlawfully is considered relevant under Rule 404(b) to show that the defendant later knowingly possessed a firearm in another charged crime. *See United States v. Cenephat*, 115 F.4th 1359, 1366–67 (11th Cir. 2024). It is relevant because there is a "logical connection between a convicted felon's knowing possession of a firearm at one time and his knowledge that a firearm is present at a subsequent time." *See id.* at 1366 (quoting *United States v. Jernigan*, 341 F.3d 1273, 1281–82 (11th Cir. 2003), *abrogated in part on other grounds by Rehaif v. United States*, 588 U.S. 225 (2019)); *see also United States v. Gomez*, 927 F.2d 1530, 1534 (11th Cir. 1991) (reasoning that prior firearm convictions were admissible to show that the defendant "was aware of the dangers of and law relating to concealed weapons and [to] rebut [his] claim that the gun was for an innocent purpose and its presence was mere accident or coincidence").

Under that binding precedent, the evidence of Whitfield's prior conviction was relevant to prove his state of mind or intent as well as his knowledge. *See United States v. Sterling*, 738 F.3d 228, 238–39 (11th Cir. 2013). And the court did instruct the jury it could consider the evidence for that purpose only.

As to Rule 404(b)'s second requirement, sufficient evidence established that Whitfield committed the previous offense in 2016,

because it was undisputed that he had been convicted of it based on a plea of guilty.  *Edouard*, 485 F.3d at 1344.

On the third requirement, several factors help us determine whether the danger of unfair prejudice substantially outweighs the probative value of the prior crime evidence: (a) the government's "incremental need" for the evidence to prove guilt beyond a reasonable doubt; (b) the similarity of the previous crime and the charged offense; and (c) the closeness in time between the previous crime and the charged offense.  *Ellisor*, 522 F.3d at 1268.  As the court did here, it may reduce the risk of undue prejudice by giving to the jury an appropriate limiting instruction.  *Edouard*, 485 F.3d at 1346.

The probative value of the prior conviction was not substantially outweighed by any prejudicial effect.  Fed. R. Evid. 404(b); *see also United States v. Ramirez*, 426 F.3d 1344, 1354 (11th Cir. 2005).  That's because the government had an "incremental need" for the evidence to prove the subjective elements of knowledge and intent, the previous crime and the present one both involved the knowing unauthorized possession of a firearm, the evidence provided proof of intent, and the previous crime, committed only five years earlier, was not too remote.  *See Ellisor*, 522 F.3d at 1268.

Despite all of this, Whitfield contends it was plain error for the court to admit the prior conviction evidence because he had stipulated to the fact that he was a felon.  Although Whitfield stipulated to being a convicted felon, he did not admit that he had the required intent of knowingly possessing the firearm.  That means

the government had the burden of proving "that [Whitfield] was in knowing possession of a firearm." *See Deleveaux*, 205 F.3d at 1297. Whitfield's not guilty plea put his knowledge and intent at issue, which entitled the government to present evidence to prove knowledge and intent. *See Cenephat*, 115 F.4th at 1366.

It follows that there was no error, let alone plain error, in allowing the government to admit evidence of Whitfield's prior conviction and guilty plea.

## B. ADMISSION OF THE BLOOD EVIDENCE

Whitfield contends that the district court erred when it allowed the government to admit evidence showing that the police found blood in the same home where they found the rifle. In his view, that evidence was irrelevant and inflammatory. But we are precluded from reviewing the blood evidence's introduction because Whitfield invited any alleged error by affirmatively agreeing to its admissibility.

"The doctrine of invited error is implicated when a party induces or invites the district court into making an error." *United States v. Brannan*, 562 F.3d 1300, 1306 (11th Cir. 2009) (alteration rejected). And "[w]here a party invites error, [we are] precluded from reviewing that error on appeal." *Id.* "Thus, if a party waives a procedural right or agrees to the admissibility of certain evidence, he cannot later complain that any resulting error is reversible." *Id.* Because Whitfield agreed to admission of the blood evidence, the invited error doctrine applies, so that's the end of the matter.

## C. MOTIONS FOR JUDGMENT OF ACQUITTAL

Whitfield asserts that the district court should have granted his motions for judgment of acquittal because the government failed to present enough evidence to prove that he possessed the firearm at all or that he possessed it after he had been convicted of a felony.

"We review *de novo* a District Court's denial of judgment of acquittal on sufficiency of evidence grounds, considering the evidence in the light most favorable to the Government, and drawing all reasonable inferences and credibility choices in [its] favor." *United States v. Capers*, 708 F.3d 1286, 1296 (11th Cir. 2013). "A jury's verdict cannot be overturned if any reasonable construction of the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt." *Id.* at 1297. "The evidence need not be inconsistent with every reasonable hypothesis except guilt, and the jury is free to choose between or among the reasonable conclusions to be drawn from the evidence presented at trial." *Id.*

In Whitfield's case, a "reasonable construction of the evidence" that the government presented "allowed the jury to find [him] guilty beyond a reasonable doubt." *See id.* The government demonstrated through its evidence that the rifle police found had only one fingerprint on it — and it matched Whitfield's fingerprint. The government also showed that the area under the bed where the police found the rifle was very dusty, but that the gun itself had no dust at all on it when police found it. That indicated it had been

in Whitfield's possession recently.  The court did not err in denying Whitfield's motions for judgment of acquittal.  *See id.* at 1296–97.

### D.  THE GOVERNMENT'S CLOSING ARGUMENT

Whitfield contends that the prosecutor prevented him from receiving a fair trial by, in his words, "showing the jurors [during closing argument] exactly how Mr. Whitfield held the rifle in order for his thumbprint to be on it."

"Allegations of prosecutorial misconduct present mixed questions of fact and law that we review *de novo*."  *United States v. Campa*, 529 F.3d 980, 992 (11th Cir. 2008).  To establish a claim of prosecutorial misconduct, a defendant must show that (1) the government's remarks were improper, and (2) the remarks prejudicially affected his substantial rights.  *United States v. Frank*, 599 F.3d 1221, 1237 (11th Cir. 2010).  "A defendant's substantial rights are prejudicially affected when a reasonable probability arises that, but for the remarks, the outcome of the trial would [have been] different."  *Id.* at 1237–38 (alteration adopted).  Any error is harmless, however, if the record contains sufficient independent evidence of guilt.  *See id.* at 1238; *see also United States v. Goldstein*, 989 F.3d 1178, 1200 (11th Cir. 2021).  And "improper statements can be rectified by the district court's instruction to the jury that only the evidence in the case be considered," or by "instruct[ing] the jury that the lawyer's statements [are] not evidence."  *United States v. Bobal*, 981 F.3d 971, 976 (11th Cir. 2020) (quotation marks omitted); *see also Goldstein*, 989 F.3d at 1200.  We consider prosecutorial conduct in the context of the entire trial.  *See Frank*, 599 F.3d at 1237.

Whitfield has not shown that the prosecutor's challenged remarks and demonstration constituted prosecutorial misconduct. He contends that what the prosecutor said and did with the firearm amounted to an assertion about "the manner in which the rifle was held and how the thumbprint got on the rifle," which resulted in Whitfield being deprived of a fair trial. But Whitfield has not shown that misconduct — assuming it was misconduct — prejudicially affected his trial. *See Campa*, 529 F.3d at 992; *see also United States v. Gonzalez*, 834 F.3d 1206, 1226 (11th Cir. 2016) (recognizing that prosecutors "may argue [during closing arguments] both facts in evidence and reasonable inferences from those facts"). Specifically, Whitfield has not shown that but for the prosecutor's remark and conduct, "the outcome of his trial would [have been] different." *See Frank*, 599 F.3d at 1237–38. Not only did the court immediately sustain Whitfield's objection, *see Campa*, 529 F.3d at 996, but the court had already instructed the jury that closing arguments were not to be construed as evidence of guilt, *see Bobal*, 981 F.3d at 976. In those ways, the court minimized any potential risk of prejudice. *See Goldstein*, 989 F.3d at 1200.

And even without the challenged remarks and allegedly improper conduct during the prosecutor's closing argument, there was enough independent evidence of Whitfield's guilt, as we discussed above, *see supra* at 14–15. *See Frank*, 599 F.3d at 1237–38.

### E.  AGGREGATION OF ERRORS

An aggregation of individually nonreversible errors may result in a denial of the defendant's right to a fair trial that requires

reversing the conviction. *United States v. Mosquera*, 886 F.3d 1032, 1052 (11th Cir. 2018). "The harmlessness of cumulative error is determined by conducting the same inquiry as for individual error — courts look to see whether the defendant's substantial rights were affected." *Capers*, 708 F.3d at 1299. Here they weren't. Reversal under the cumulative error doctrine would not be appropriate. *Mosquera*, 886 F.3d at 1052.

**AFFIRMED.**