**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————————

No. 25-10155

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

OLIVIER RICARDY ALEXANDRE,

*Defendant-Appellant.*

————————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:24-cr-20354-DSL-1

————————————————

Before LUCK, LAGOA, and ED CARNES, Circuit Judges.

PER CURIAM:

Olivier Ricardy Alexandre pleaded guilty to one count of possessing ammunition as a convicted felon and one count of possessing a firearm and ammunition as a convicted felon, in violation

of 18 U.S.C. § 922(g)(1). When calculating the guidelines range, the district court applied a sentence enhancement to account for the fact that, while Alexandre was unlawfully possessing ammunition and a firearm, he attempted to murder someone.

The court considered recordings from video surveillance that showed Alexandre, who at the time was on probation for a felony, chasing B.V. into his home while firing eighteen shots at him.  The court also considered a factual proffer in which Alexandre admitted that he wanted to kill B.V. to avenge the death of a friend who had been killed by B.V. years earlier.  In the same proffer, Alexandre also admitted that the week after he shot at B.V., he used another loaded pistol to "confront" a tow truck driver who was attempting to repossess a vehicle.

Weighing the 18 U.S.C. § 3553(a) factors, the district court varied upward from Alexandre's guidelines range of 108 to 135 months imprisonment, sentencing him to 240 months. Alexandre challenges his sentence on several grounds, none of which succeeds.

## I.

Alexandre first contends that the district court erred in applying to him the attempted first-degree murder guideline under U.S.S.G. § 2A2.1(a)(1) through § 2K2.1(c)(1)(A)'s cross-reference to § 2X1.1.  He argues that the court did so without sufficient evidence or explicit findings about his intent to kill.  According to Alexandre,

the court should have considered whether he acted with less culpable intent when he shot at B.V. eighteen times because he might have just meant to scare, threaten, or injure him.

Calculating Alexandre's base offense level for his § 922(g) felon-in-possession crimes started with U.S.S.G. § 2K2.1. *See* U.S.S.G. § 2K2.1 (2024). The district court found that Alexandre "used or possessed" the firearm or ammunition "in connection with the . . . attempted commission of another offense," and that triggered § 2K2.1(c)(1)(A)'s cross-reference to the guideline for attempt crimes, § 2X1.1. *See id.* § 2K2.1(c)(1)(A).

The court determined that the evidence presented at sentencing established that Alexandre had attempted to commit first degree murder, which "includes any willful, deliberate, malicious, and premeditated killing." *United States v. Cenephat*, 115 F.4th 1359, 1368 (11th Cir. 2024) (quotation marks omitted). "Attempted murder occurs when a person (1) intends to kill someone and (2) completes a substantial step towards that goal." *Id.* (alteration adopted) (quotation marks omitted).

Under § 2X1.1, the court determined that because the attempted murder guideline, § 2A2.1(a)(1), expressly covered Alexandre's conduct, it applied, making his base offense level 33. *See id.* §§ 2X1.1(c)(1) (providing that "[w]hen an attempt . . . is expressly covered by another offense guideline section, apply that guideline section"), 2A2.1(a)(1) (setting a base offense level of 33 "if the object of the offense would have constituted first degree murder").

We review *de novo* the district court's interpretation of the sentencing guidelines and its application of the guidelines to the facts, but we review its factual findings only for clear error. *United States v. Barrington*, 648 F.3d 1178, 1194–95 (11th Cir. 2011). A factual finding is clearly erroneous when it is not supported by substantial evidence or when we are "left with the definite and firm conviction that a mistake has been committed." *United States v. Robertson*, 493 F.3d 1322, 1330 (11th Cir. 2007) (quotation marks omitted). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *United States v. Izquierdo*, 448 F.3d 1269, 1278 (11th Cir. 2006) (quotation marks omitted).

The court made all the necessary findings to conclude that the attempted first-degree murder guideline applied, and the evidence clearly supports those findings. At the sentence hearing, the government introduced video recordings showing Alexandre chasing B.V. into his home and shooting at him eighteen times while B.V. dives to the floor and crawls away, miraculously avoiding being shot. One of the videos shows B.V.'s mother running into the room and slamming the front door after Alexandre runs out of the house.

And in Alexandre's factual proffer, he admitted that "he saw [B.V.] at his place of employment and wanted to kill him" to avenge the death of his friend, whom B.V. had shot six years before. Based on that evidence, the court found that "[t]his was cold-blooded attempted murder" with a total of eighteen shots fired at

25-10155                Opinion of the Court                5

B.V. outside and inside of his home. The court recognized that Alexandre "basically made no bones about his motive." He admitted he wanted to kill B.V. Not only that, but also Alexandre "went in the home where three other people were," and he fired "a barrage" of gunshots, conduct indicating that he "didn't care what bystanders were present."

Based on the undisputed evidence that the court considered, its findings are not erroneous, much less clearly erroneous. The court properly applied the cross-reference for attempted murder to set Alexandre's base offense level at 33.[1] *See* U.S.S.G. §§ 2X1.1(c)(1), 2A2.1(a)(1).

---

[1] Alexandre also takes issue with the court's comment at his sentence hearing that, in addition to attempted murder, Alexandre's entry into B.V.'s house while shooting at him was an armed burglary. Alexandre did not object to that comment, and he argues for the first time on appeal that the district court should have made findings about all the elements of burglary. We review that unpreserved issue for plain error only, and Alexandre must show (1) an error (2) that is plain (3) that affects substantial rights (4) which seriously affects the fairness, integrity, or public reputation of judicial proceedings. *United States v. Rodriguez*, 398 F.3d 1291, 1298 (11th Cir. 2005).

The district court didn't rely on armed burglary to calculate Alexandre's offense level. To the extent the court in its 18 U.S.C. § 3553(a) analysis considered armed burglary to be uncharged relevant conduct, Alexandre has identified no precedent indicating that the court was required to make findings as to each of the elements of burglary, and he has failed to show that any absence of those findings affected his substantial rights. The undisputed evidence established that Alexandre did in fact enter B.V.'s house while shooting at him. And that conduct was highly relevant to the district court's sentencing decisions, regardless of how it was classified. *Cf. United States v. Gyetvay*, 149 F.4th 1213, 1240 (11th Cir. 2025) ("Because it is clear to us what evidence the district

## II.

Alexandre contends that his sentence is procedurally unreasonable because the district court based it on "speculative relevant conduct" that was not supported by reliable evidence.  He also asserts in passing that his sentence is substantively unreasonable because it is procedurally unreasonable.

At the sentence hearing, the government presented shell casing evidence to establish that the firearm Alexandre used when he fired eighteen rounds at B.V. was the same firearm that some unidentified person had used to shoot B.V. five months before.  Alexandre asserts that his connection to the firearm cannot establish his connection to the earlier attempt to kill the same victim.

We "review[] the reasonableness of a sentence under a deferential abuse-of-discretion standard," *United States v. Dougherty*, 754 F.3d 1353, 1361 (11th Cir. 2014), and we evaluate the substantive reasonableness of a sentence "in light of the totality of the circumstances and the 18 U.S.C. § 3553(a) factors," *United States v. Fox*, 926 F.3d 1275, 1278 (11th Cir. 2019).  "A district court abuses its discretion when it (1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors."  *United States v. Irey*,

---

court relied upon in calculating its sentence, the district court did not plainly err by failing to provide an explicit relevant-conduct explanation.").

612 F.3d 1160, 1189 (11th Cir. 2010) (en banc) (quotation marks omitted).  It also abuses its discretion when it makes clearly erroneous factual findings.  *Gyetvay*, 149 F.4th at 1239.

Apart from Alexandre's objection to the attempted murder enhancement, which we have already concluded was properly applied, *see supra* at 2–5, the parties agreed that 108 to 135 months was the correctly calculated guidelines range.  Alexandre faced a 30-year statutory maximum.

The government argued for an upward variance to a sentence of 300 months (25 years).  It pointed out that Alexandre had "hunt[ed] down this victim" and attempted to "assassinate him" with a "barrage of gunfire" inside a home occupied by other family members who also could have been killed.  The shooting happened just "a few weeks after" Alexandre had received a probation sentence "in Kentucky for armed drug trafficking."  And just a week after trying to murder B.V., Alexandre "pull[ed] a gun on a tow truck driver when he didn't know the police were outside waiting to arrest him."  The government argued that an upward variance to a 25-year sentence was justified based on Alexandre's "absolutely horrific conduct," his criminal history, and "the need to protect the victims and deter others from attempting to murder people."

Defense counsel argued for a sentence within the guidelines, asserting that attempting to murder someone had already been taken into account in the guidelines calculation based on the application of § 2A2.1.  Counsel also pointed out that Alexandre was facing additional penalties in state court.

In his allocution, Alexandre told the court that he was a college graduate who had excelled on the track team. He had family and community support. He took responsibility for his actions and asked the court for leniency.

In its analysis of the 18 U.S.C. § 3553(a) factors, the district court considered the fact that in October 2022, B.V. had been shot with the same firearm that Alexandre used in March 2023 when he fired eighteen rounds at B.V. The government's shell casing evidence established that same gun was used in both crimes. The court found that, even if Alexandre didn't pull the trigger in the earlier shooting, he had some connection to it through the firearm. The court reasoned that the same gun, the same victim, and two shootings just months apart amounted to something more than a mere coincidence. The court's findings about that were not clearly erroneous.

The court also considered Alexandre's criminal history and the fact that he was on probation for a felony in another state when he engaged in the conduct that led to his two current § 922(g) convictions. It factored in the nature and severity of the offenses, highlighting the fact that Alexandre had disregarded the safety of bystanders when he shot a "barrage" of bullets at B.V. in his home. The court focused on "the cold-blooded attempted murder" which was soon followed by Alexandre's use of another firearm to intimidate a tow truck driver. The court didn't overlook Alexandre's history and characteristics, pointing out that he was a college track

star who "possessed gifts." Instead of using those gifts, however, he had "wasted" them and had "led a life of crime."

The court considered the need to provide specific and general deterrence, to protect the public, to provide just punishment for the offense, and to promote respect for the law. It noted the statutory maximum sentence of 30 years and decided not to impose it because of Alexandre's acceptance of responsibility and the fact that he was a young man. After its detailed consideration of the § 3553(a) factors and the guidelines range, the court varied upward to 240 months imprisonment, which it found was sufficient but not greater than necessary.

We have recognized that "a district court has considerable discretion in deciding whether the § 3553(a) factors justify a variance and the extent of one that is appropriate." *United States v. Shaw*, 560 F.3d 1230, 1238 (11th Cir. 2009) (quotation marks omitted). We give due deference to its decision. *Id.* In imposing a sentence of 240 months, the district court provided detailed justifications for its upward variance. *See id.* It carefully considered the § 3353(a) factors. It did not abuse its discretion.

## III.

Alexandre's final contention is based on a remark that counsel for the government made during the sentence hearing. Although Alexandre didn't object at the time, he now contends that the remark amounted to prosecutorial misconduct that was "calculated to inflame the sentencing judge." He argues that he is entitled to resentencing because of it.

At the sentence hearing, the government introduced into evidence a recording of a jail call from Alexandre's time in state custody after his detention hearing.  In the call Alexandre, who was anticipating being released from jail, talked about how he was in the wrong frame of mind and wanted to say, "Look, look, they let a murderer out."

After discussing that call and Alexandre's reference to himself as a "murderer," counsel for the government mentioned that Alexandre was a young man and the statutory maximum for his current convictions was 30 years.  Given those numbers, counsel stated that the sentencing judge was "going to be the judge that lets this murderer out of prison, and it's really just a question of when."  The government then asked for a sentence of 25 years.

When it was defense counsel's turn to argue about what sentence would be appropriate, he emphasized that Alexandre "didn't murder anybody."  Instead, "this was an attempt."

The court gave no indication that it was sentencing Alexandre for having committed a murder.  Instead, as part of its analysis of the § 3553(a) factors, the court considered the jail call.  It found that Alexandre's statement about "let[ting] a murderer out" was "very relevant."  But the court made it clear that for the purpose of the § 3553(a) factors and the upward variance, it was "focus[ing] upon the cold-blooded attempted murder" and just "shortly thereafter, the attempted intimidation of a tow truck driver after retrieving the second firearm."

"For a prosecutor's remarks to constitute prosecutorial misconduct, they must (1) be improper and (2) prejudicially affect the defendant's substantial rights." *United States v. Oscar*, 877 F.3d 1270, 1283 (11th Cir. 2017).   And when a defendant fails to object to the alleged misconduct, as Alexandre did here, we review only for plain error.  *United States v. House*, 684 F.3d 1173, 1197 (11th Cir. 2012).

There was no prosecutorial misconduct here.   Alexandre was the one who, in the jail call, referred to himself as a "murderer." Counsel for the government merely referred to the jail call, which was admitted into evidence without objection, and repeated what Alexandre had said about himself.   In its detailed analysis of the § 3553(a) factors, the court considered the jail call itself, not anyone's comment about it.   Alexandre has shown no error, much less plain error.

**AFFIRMED.**