[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-10163

_____

D.C. Docket No. 1:18-cr-20584-JEM-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

SURMONDREA MCGREGOR,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 3, 2020)

Before WILSON, MARCUS and THAPAR,[*] Circuit Judges.

MARCUS, Circuit Judge:

During a search arising out of a routine probation check of Surmondrea McGregor's shared home, police discovered a Glock nine-millimeter pistol with a clear extended magazine and evidence of identity theft -- personal identifying information ("PII") and unauthorized access devices. The firearm was discovered in a closet along with a sheet of paper containing PII, a sheet of paper from which McGregor's fingerprints were later recovered. McGregor was later charged by a federal grand jury with being a felon in possession of a firearm, and he and his co-defendant were charged with identity theft and possession of unauthorized access devices.

On the first day of trial, McGregor pled guilty to the firearm charge and argued that the firearm evidence should be excluded because its probative value was substantially outweighed by the danger of unfair prejudice. The district court overruled his objection. Thereafter, McGregor was convicted by a jury on all of the remaining counts. He now says the district court abused its considerable discretion in admitting the evidence. We are unpersuaded because the firearm was found in close proximity to the PII in a small closet, it tied McGregor (and not his

---

[*] The Honorable Amul R. Thapar, United States Circuit Judge for the Sixth Circuit, sitting by designation.

co-defendant) directly to the PII and had substantial probative value in proving that McGregor actually possessed the PII. Nor did the trial court abuse its discretion in concluding that firearms are not so inherently prejudicial as to substantially outweigh the probative value here. Thus, we affirm.

I.

In 2016, Surmondrea McGregor pled guilty in a Florida state court to attempted premeditated murder with a firearm and to possession of a firearm by a convicted felon. He was sentenced to 18 months' imprisonment and four years of probation, the terms of which prohibited McGregor from possessing or owning a firearm and from possessing any drugs or narcotics not prescribed to him by a physician. McGregor also agreed as part of the terms of his probation to home visits conducted by his probation officer.

On February 23, 2018, Florida Department of Corrections probation officer Kimberly Schultz conducted a home visit of McGregor, who was under her supervision. When she arrived at McGregor's Miami residence, Schultz smelled marijuana and observed damaged cars outside the home. She contacted the police to ask for their assistance in securing the home so that Schultz could inspect it. She reached a City of Miami police sergeant who told her he had seen a photograph of McGregor holding a firearm that McGregor had apparently posted to a social media platform, Snapchat. Because of the location of the residence, the

3

officer advised her to contact the Miami-Dade Police Department, rather than City of Miami Police, which she did.

Miami-Dade police officers, in turn, secured the home while Schultz went inside to inspect it. Schultz again smelled marijuana and went into a bedroom, where she discovered marijuana on a table and a medical record from a doctor's visit with McGregor's name on it. Schultz reported that she had found the contraband to the police officers on the scene, who decided to stop the search and obtain a warrant. When the officers executed a warrant secured from a neutral magistrate, they recovered marijuana, a firearm with an extended clear magazine, and credit cards and papers with PII of individuals not at the residence. Notably, the firearm was found in a small closet near the living room, along with one sheet of paper containing social security numbers. All of the occupants of the home were arrested.

On July 5, 2018, a grand jury sitting in the Southern District of Florida indicted McGregor on five counts: one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) (Count 1); one count of possession of fifteen or more unauthorized access devices in violation of 18 U.S.C. § 1029(a)(3) (Count 2); and three counts of aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1) (Counts 3–5). The co-defendant, Ricky Fernetus, was charged separately with possessing fifteen or more unauthorized access devices

(Count 6), and with aggravated identity theft (Counts 7–9). On October 23, 2018, the government filed its notice of intent to introduce certain evidence pursuant to Rule 404(b) of the Federal Rules of Evidence, including the circumstances surrounding the probation sweep to explain why officers were at the residence, images of McGregor from social media postings both with the firearm and with the PII of other individuals, and McGregor's prior convictions.

McGregor and his co-defendant were tried together over four days, from November 5 to 8, 2018. On the first day of trial, McGregor changed his plea to guilty on Count 1 -- possession of a firearm by a convicted felon, a Glock nine-millimeter pistol and twelve rounds of nine-millimeter ammunition -- but proceeded to trial on the remaining four counts.

Before trial began, McGregor objected to the introduction of the firearm and several photographs of McGregor holding the firearm and of it being displayed with substantial amounts of cash. He claimed undue prejudice in a trial that was -- since McGregor had pled guilty to the gun charge -- solely about fraud. The government argued, however, that the gun was relevant to establishing McGregor's knowing possession of PII because the Glock was found in the same closet with a paper containing PII, which had McGregor's fingerprints on it. The government also claimed that this evidence was "relevant to show intent to defraud as firearms are commonly carried when folks are possessing this type of valuable personal

5

information which can have a worth up to the thousands of dollars." The government added that any claimed prejudice would be limited because it would not attempt to introduce McGregor's prior felony conviction or tell the jury that McGregor's possession of the firearm had been illegal, since he had pled guilty to the gun charge. McGregor's counsel said, however, that the government had "two fingerprints . . . of Mr. McGregor," "one on a sheet of PII and . . . another on a credit card," "[s]o they [had] more than enough evidence to tie [McGregor] to the PII," and that the introduction of the gun was just designed "to inflame the jury."

The district court agreed that the gun was prejudicial, but said that "it's supposed to be, or it isn't relevant. The question is whether it's unfairly prejudicial, and I don't really think it is." The court observed that the possession of a firearm no longer inflames anyone: "[m]aybe it used to inflame people, but I don't think it inflames anybody anymore." Thus, it tentatively admitted the evidence. McGregor preserved his objection.

McGregor and his co-defendant Frenetus mounted competing defenses: McGregor claimed the PII and access devices belonged to Frenetus, while Frenetus urged that they belonged to McGregor. Indeed, in her opening statement, McGregor's counsel told the jury that while "there was definitively fraud going on here," "it was not perpetrated by Surmondrea McGregor," but rather by his co-defendant, Fernetus, and by Fernetus's girlfriend, who owned the apartment.

6

Fernetus's counsel argued the converse: that the PII belonged to McGregor. His counsel also told the jury that "the evidence will show that they found a firearm that Mr. McGregor was photographed with," that the firearm was found "right next to the personal identifiable information," and that "the sheet of paper [containing PII] and the firearm [were] found in the very same closet." Fernetus's counsel explained that while there was a mountain of evidence linking McGregor to the PII, there were only fingerprints linking Fernetus to the fraud and an alleged confession, which Fernetus disputed having made.

McGregor again objected during trial to the introduction of the firearm evidence -- the firearm itself as well as the images posted to McGregor's Snapchat account. Ultimately, the district court overruled the objection. The firearm and two images of the gun posted to McGregor's Snapchat account were admitted: one image of McGregor holding the firearm with a clear extended magazine containing live ammunition and another of the firearm displayed with a substantial amount of cash.

In closing argument, the government explained that the distinctive gun with a see-through extended magazine was recovered from the closet, that the gun was tied to McGregor through his Snapchat photos, that the gun was found in the closet with a piece of paper containing PII, and that the piece of paper containing PII had McGregor's fingerprints on it. McGregor's counsel claimed, however, that the gun

7

had nothing to do with fraud and that the government had introduced it into evidence just to tell the jury that "he's a bad guy, it's bad to have a gun, let's convict them of this fraud." McGregor's counsel also argued that the idea that the firearm was there to protect the PII was unpersuasive because the PII was found strewn about the home in several places, and contained many other people's fingerprints. His counsel further told the jury that the evidence suggested the bedroom was not shared and that it really belonged to Frenetus; in fact, the majority of the PII was found along with Frenetus's belongings in his bedroom.

The jury found McGregor and his co-defendant guilty on all of the fraud counts. The district court sentenced McGregor to a total of 134 months' imprisonment and three years of supervised release.

McGregor timely appealed his convictions to this Court. Again, McGregor argues that the district court abused its discretion because the firearm evidence was not relevant to the fraud charges and its probative value was substantially outweighed by the danger of unfair prejudice.

## II.

We review "the district court's ruling on admission of evidence for abuse of discretion." United States v. Jiminez, 224 F.3d 1243, 1249 (11th Cir. 2000). The "'deference that is the hallmark of abuse-of-discretion review,' requires that we not reverse an evidentiary decision of a district court 'unless the ruling is manifestly

erroneous.'" United States v. Frazier, 387 F.3d 1244, 1258 (11th Cir. 2004) (en banc) (quoting Gen. Elec. Co. v. Joiner, 522 U.S. 136, 142–43 (1997)).  Because "the application of an abuse-of-discretion review recognizes the range of possible conclusions the trial judge may reach," we "must affirm unless we find that the district court has made a clear error of judgment, or has applied the wrong legal standard." Id. at 1259.

The starting place for evidentiary admissibility is relevance.  Evidence is "relevant" under Rule 401 of the Federal Rules of Evidence if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." FED. R. EVID. 401.  And under Rule 402, "[r]elevant evidence is admissible" unless provided otherwise by the Constitution, federal statute, the other Federal Rules of Evidence, or other rules made by the Supreme Court. FED. R. EVID. 402.  Conversely, "[i]rrelevant evidence is not admissible." Id.

The government argued in district court, and maintains in this appeal, two theories of relevance.  First, it says the firearm was relevant to show that McGregor possessed the PII.  That is, because the firearm was found in a small closet with a sheet of paper containing PII, and because the firearm belonged to McGregor, as shown through the Snapchat photographs, it was far more likely that the PII too belonged to McGregor.  That is plainly correct.  McGregor says that

9

because McGregor's fingerprints were found on the sheet of paper with the PII recovered from the closet, the firearm evidence was not needed by the government to establish the defendant's possession, and was therefore irrelevant. But this argument is really about the probative value of the firearm evidence -- that is, how much more likely it made the fact of possession -- not its relevance. The evidence was straightforwardly relevant to possession.

The government advances a second theory: that the firearm evidence was relevant to McGregor's mental state of knowingly and intentionally possessing the unauthorized access devices because, as the government's expert testified, just like drugs and guns, "fraud and firearms go together" as people wish to protect valuable PII and access devices. Because we find the first theory of relevance dispositive -- that the firearm evidence was relevant to possession -- we need not and do not reach the alternative "tools of the trade" theory of relevance.

Having determined that the evidence was indeed relevant, we turn to whether the district court abused its discretion in admitting the evidence because, despite its undeniable relevance, the danger of unfair prejudice substantially outweighed its probative value. Against the background principle that relevant evidence is admissible, Rule 403 provides that a "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." FED. R. EVID. 403. We have long said that Rule 403 "is an

extraordinary remedy which should be used sparingly, and, indeed, the trial court's discretion to exclude evidence as unduly prejudicial is narrowly circumscribed." United States v. Cross, 928 F.2d 1030, 1051 (11th Cir. 1991) (quotations omitted); see United States v. King, 713 F.2d 627, 631 (11th Cir. 1983) ("[B]ecause it permits a trial court to exclude concededly probative evidence, Rule 403 is an extraordinary remedy which should be used sparingly.") (quotations omitted); see also United States v. Lopez, 649 F.3d 1222, 1247 (11th Cir. 2011) (same); United States v. Dodds, 347 F.3d 893, 897 (11th Cir. 2003) (same); United States v. Meester, 762 F.2d 867, 875 (11th Cir. 1985) (same).

Moreover, "[i]n applying Rule 403, courts must 'look at the evidence in a light most favorable to admission, maximizing its probative value and minimizing its undue prejudicial impact.'" Aycock v. R.J. Reynolds Tobacco Co., 769 F.3d 1063, 1069 (11th Cir. 2014) (quoting United States v. Alfaro-Moncada, 607 F.3d 720, 734 (11th Cir. 2010)); see United States v. Finestone, 816 F.2d 583, 585 (11th Cir. 1987) ("The Federal Rules of Evidence favor admission of any evidence tending to prove or disprove a fact in issue.  The balance under Rule 403 should be struck in favor of admission.") (citations and quotations omitted and alteration adopted); see also United States v. Tinoco, 304 F.3d 1088, 1120 (11th Cir. 2002) (same); United States v. Elkins, 885 F.2d 775, 784 (11th Cir. 1989) (same).  We also recognize that "the district court is uniquely situated to make nuanced

11

judgments on questions that require the careful balancing of fact-specific concepts like probativeness and prejudice, and we are loathe to disturb the sound exercise of its discretion in these areas." United States v. Jernigan, 341 F.3d 1273, 1285 (11th Cir. 2003). "Only if the decision to admit evidence over a Rule 403 challenge is unsupportable when the evidence is viewed in the light most supportive of the decision will we say that the decision constitutes an abuse of discretion." Id.

We begin with the observation that the firearm evidence in the context of this case was not only minimally relevant but had substantial probative force. McGregor's defense to the fraud charges was that he was just in the wrong place at the wrong time and that the PII did not belong to him. The fact that his firearm was recovered from a small closet with a sheet of PII -- a sheet that also contained McGregor's fingerprints -- was highly probative that the PII also belonged to McGregor. Indeed, although McGregor did not put on a defense, his counsel argued in closing that the sheets of PII contained other people's fingerprints as well, and that the evidence recovered from the bedroom suggested the bedroom was not shared, but rather was occupied solely by Frenetus, thereby indicating that the PII found in the bedroom belonged to Frenetus. The firearm and photographs had significant probative value in establishing that McGregor knowingly possessed the PII.

12

Moreover, the district court did not abuse its discretion by determining that the probative value of the evidence was not substantially outweighed by the risk of unfair prejudice. The government limited any unfair prejudicial effect by neither telling the jury that McGregor's possession of the firearm was unlawful, nor indicating to the jury that McGregor had prior felony convictions that would make possession unlawful. Moreover, we agree with the district court that the possession of a firearm today is not so inherently prejudicial as to necessarily outweigh its probative value.[1]

The district court did not abuse its considerable discretion and the judgment of the court is **AFFIRMED**.

---

[1] McGregor also says the evidence of the firearm and photos of McGregor holding it were inadmissible character evidence. Under Rule 404(b) of the Federal Rules of Evidence, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," but it is admissible "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." FED. R. EVID. 404(b). However, McGregor did not object on the basis of 404(b) at trial. See United States v. DiFalco, 837 F.3d 1207, 1220–21 (11th Cir. 2016) (noting that where a claim is not raised in the district court, "we may review [it] only for plain error," which "places a daunting obstacle before the appellant") (quotations omitted). But in any event, Rule 404(b) is not implicated in this case, where the firearm directly tied McGregor to the PII and was therefore res gestae of the case. See United States v. Nerey, 877 F.3d 956, 974 (11th Cir. 2017) ("Rule 404(b) does not apply where the evidence of other crimes, wrongs, or acts constitutes res gestae.").

13