[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 24-10422

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JAMES PETTWAY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:23-cr-00138-TFM-B-1

_____

Before ROSENBAUM, ABUDU, and MARCUS, Circuit Judges.

PER CURIAM:

James Pettway appeals his conviction and 180-month sentence for knowing possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). On appeal, Pettway argues that: (1) the district court erred in admitting at trial allegedly irrelevant, prejudicial evidence; (2) the district court erred in calculating his base offense level; (3) his upward-variance sentence was substantively unreasonable; and (4) § 922(g)(1) is unconstitutional, both facially and as applied. After thorough review, we affirm.

I.

We review the admissibility of evidence for abuse of discretion. *United States v. Troya*, 733 F.3d 1125, 1131 (11th Cir. 2013). However, if we find that a district court abused its discretion in admitting evidence, we review for harmless error. *United States v. Martin*, 794 F.2d 1531, 1533 (11th Cir. 1986). Under that standard, "[r]eversal is warranted only if [the error] resulted in actual prejudice because it had substantial and injurious effect or influence in determining the jury's verdict." *United States v. Phaknikone*, 605 F.3d 1099, 1109 (11th Cir. 2010) (quotations omitted). In making this determination, we consider whether there was overwhelming evidence of guilt. *Id.*

We review a district court's fact findings for clear error, and its interpretation of the Sentencing Guidelines *de novo*. *United States v. Cenephat*, 115 F.4th 1359, 1367 (11th Cir. 2024). To find clear

error, we must be left with "a definite and firm conviction that a mistake has been committed." *Id.* (quotations omitted).  We review the sentence imposed, including those that involve variances, for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007). Ordinarily, we review the constitutionality of a statute *de novo* as a question of law. *United States v. Wright*, 607 F.3d 708, 715 (11th Cir. 2010).

The prior-panel-precedent rule requires us to follow a prior binding precedent unless it is overruled by us *en banc* or by the Supreme Court. *United States v. White*, 837 F.3d 1225, 1228 (11th Cir. 2016).  "To constitute an overruling for the purposes of this prior panel precedent rule, the Supreme Court decision must be clearly on point," and "actually abrogate or directly conflict with, as opposed to merely weaken, the holding of the prior panel." *United States v. Kaley*, 579 F.3d 1246, 1255 (11th Cir. 2009) (quotations omitted).  To abrogate a prior panel decision, "the later Supreme Court decision must demolish and eviscerate each of its fundamental props." *United States v. Dubois*, 139 F.4th 887, 893 (11th Cir. 2025) (quotations omitted).

## II.

First, we are unpersuaded by Pettway's claim that the district court abused its discretion in admitting at trial evidence of an alleged attempted robbery.  In general, we recognize three tiers of admissible evidence.  For starters, "[r]elevant direct evidence of a crime charged is always admissible unless it falls under a rule of exclusion." *Troya*, 733 F.3d at 1131.  Second, evidence is admissible

as "intrinsic" to the crime itself if it arose from the same transaction or series of transactions as the charged crime, it completes the story of the crime, or it is intertwined with evidence of the charged crime. *Id*. Third, "extrinsic" evidence may be admissible -- pursuant to Federal Rule of Evidence 404(b) -- if it is relevant to an issue other than character and if the jury reasonably may conclude that the defendant committed the act at issue. *Id*.

In analyzing whether evidence is "intrinsic," we've said that "[e]vidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive and set-up of the crime, is properly admitted if linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury." *United States v. McLean*, 138 F.3d 1398, 1403 (11th Cir. 1998) (quotations omitted). Evidence typically constitutes a series of transactions if the contested evidence has a temporal and factual connection with the charged offense. *United States v. Muscatell*, 42 F.3d 627, 630 (11th Cir. 1995) (explaining that the evidence implicated the same actors in common roles with the same modus operandi).

Regardless of whether evidence is admissible as direct, intrinsic or extrinsic, a district court may exclude it if its probative value is substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403. We've said that the exclusion of relevant evidence is extraordinary relief, so a district court should deploy that strong medicine sparingly. *United States v. McGregor*, 960 F.3d 1319,

1324 (11th Cir. 2020).  We view the disputed evidence "in a light most favorable to admission, maximizing its probative value and minimizing its undue prejudicial impact." *Id.* (quotations omitted). Moreover, the risk of undue prejudice can be reduced by an appropriate limiting instruction.  *United States v. Ramirez*, 426 F.3d 1344, 1354 (11th Cir. 2005); *see also United States v. Diaz-Lizaraza*, 981 F.2d 1216, 1225 (11th Cir. 1993).

Here, the district court did not abuse its discretion in admitting at Pettway's felon-in-possession trial evidence of an attempted robbery.  As the record reflects, Pettway's felon-in-possession conviction arose out of a report the Mobile Police Department received of a robbery in November 2022, where the suspect was described as having used a motorized scooter or bicycle.  When the investigating officer canvassed the scene two days later, a witness claimed that a person named "Jimmy" committed the robbery and described a nearby location where the officer likely could find "Jimmy."  At that location, the investigating officer saw a person "on a motorized black bike" who matched the suspect's description.  The investigating officer approached the individual, whom he later identified as Pettway, and noticed a handgun inside Pettway's waistband.  Pettway was taken into custody, and during the subsequent interview, he admitted that he'd had the gun for about three weeks and was a convicted felon.  Investigators later concluded that the casing from the robbery scene matched the handgun officers found on Pettway during his arrest, and images from the body camera footage of another officer at the scene suggested that a firearm was in Pettway's waistband.

On this record, the district court did not abuse its discretion in admitting evidence of the attempted robbery. At trial, Pettway questioned the investigating officer's credibility and investigative decisions, highlighting the lack of fingerprint and DNA testing on the firearm and problems with the video evidence of the incident and the interview. In response, the government presented the robbery evidence to complete the story of how Pettway came to be investigated by police and found to be a felon in possession of a firearm, just two days after the attempted robbery.

We've often allowed the introduction of evidence to explain the actions of law enforcement officers. *See, e.g.*, *United States v. Joseph*, 978 F.3d 1251, 1263 (11th Cir. 2020) (affirming the introduction of evidence that a defendant used a false identity to rent a property at which he stored drugs because it was "necessary to complete the story of how officers discovered [the defendant] was renting the apartment and garage"); *United States v. Weeks*, 716 F.2d 830, 832 (11th Cir. 1983) (upholding the admission of evidence about an investigation into stolen vehicles as part of the story of a subsequent assault of an officer involved in that investigation). In Pettway's case, the robbery evidence did just that, demonstrating what kicked off the discovery of the firearm; why officers focused on Pettway; and the close temporal and factual link between the firearm officers discovered during Pettway's arrest and a spent casing found at the robbery scene. By showing how Pettway came to be found knowingly carrying a firearm, the attempted robbery evidence was admissible intrinsic evidence that fell within the same transaction or series of transactions, told the story of the crime, or

otherwise was intertwined with evidence about the charged offense.

Moreover, the evidence satisfied the requirements of Rule 403 because the risk of unfair prejudice did not substantially outweigh the probative force of the evidence. Pettway cursorily argues that the evidence had little probative value and resulted in substantial unfair prejudice, presumably because he did not want the jury to hear that he had allegedly used the gun he was carrying around. But he does not explain how the robbery evidence's risk of prejudice *substantially outweighed* its probative value in, among other things, helping the jury understand the investigating officer's account of the circumstances that gave rise to Pettway's arrest and corroborating Pettway's admissions as to the time frame for his unlawful possession. It's also worth noting that the court gave a limiting instruction concerning this evidence, telling the jury that it could not consider the evidence about other acts to decide if he committed the activity alleged in the indictment, but could consider the evidence only for limited purposes, including as evidence of Pettway's motive to possess a firearm. With this instruction, which mitigated the risk of unfair prejudice, we cannot say that the risk of unfair prejudice from the robbery evidence substantially outweighed its probative value in proving Pettway's knowing possession of the firearm.

But, even if we were to conclude that its risk of prejudice substantially outweighed its probative value, the error still would be harmless because there was overwhelming evidence that

Pettway possessed the firearm unlawfully. As the record reflects, when the investigating officer approached Pettway, he saw a firearm in Pettway's waistband; images from another officer's body camera footage supported the firearm's presence; and Pettway confessed to his possession of the firearm in an interview. *See, e.g.*, *United States v. Hosford*, 782 F.2d 936, 940 (11th Cir. 1986) ("[T]he evidence of guilt was of such magnitude that even if the prior bad acts testimony was improvidently admitted, the error did not affect the substantial rights of the parties." (quotations omitted)). Further, as we've noted, the court gave a limiting instruction to the jury. For these reasons, we affirm the court's decision to admit evidence of the attempted robbery at trial.

III.

We also are unpersuaded by Pettway's argument that the district court erred at sentencing when it assigned to him a higher base offense level based on the cross-reference found in U.S.S.G. § 2K2.1(c)(1)(A) to the robbery guideline, U.S.S.G. § 2B3.1(a). In brief, § 2K2.1(c)(1)(A) of the Sentencing Guidelines directs district courts to apply a cross reference to § 2X1.1 if a defendant used or possessed any firearm in the convicted offense in connection with an attempt of "another offense." U.S.S.G. § 2K2.1(c)(1)(A). Section 2X1.1 covers attempt, solicitation, and conspiracy, and directs districts courts to look to the guideline for the substantive offense. U.S.S.G. § 2X1.1(a). Section 2B3.1, the guideline provision for robbery, assigns a base offense level of 20. U.S.S.G. § 2B3.1(a). The guideline provides for varying enhancements to the base offense

level depending on the particular use of the firearm. *Id.* § 2B3.1(b). Specifically, the section provides for a seven-level increase if a firearm was "discharged." *Id.* § 2B3.1(b)(2)(A).

District courts may rely on statements in the presentence investigation report that the defendant did not object to "with specificity and clarity," as well as trial evidence. *Cenephat*, 115 F.4th at 1367–68 (quotations omitted). However, if "a defendant objects to the factual basis of his sentence, the government has the burden of establishing the disputed fact." *Id.* (quotations omitted). A preponderance of reliable evidence is necessary to establish a sentencing enhancement. *Id.* at 1368.

Under Alabama law, robbery occurs when a person, in the course of committing a theft, "[t]hreatens the imminent use of force against the person of the owner or any person present with intent to compel acquiescence to the taking of or escaping with the property." Ala. Code § 13A-8-43(a)(2). A person commits first-degree robbery when he violates § 13A-8-43, and, among other elements, does so while armed with a deadly weapon. *Id.* § 13A-8-41(a)(1). Under Alabama law, "[a] person is guilty of an attempt to commit a crime if, with the intent to commit a specific offense, he or she does any overt act towards the commission of the offense." *Id.* § 13A-4-2(a).

Here, Pettway argues that the district court erred at sentencing when it assigned to him the higher base offense level from § 2B3.1(a) because the evidence did not sufficiently establish that he committed an attempted robbery with the firearm found in his

possession. We disagree. At trial, the district court heard that Pettway had admitted to possessing the firearm for three weeks, prior to and including the date of the attempted robbery. The trial evidence also showed that the fired cartridge recovered from the area of the attempted robbery matched Pettway's firearm. Plus, the investigating officer testified that the victim had identified Pettway as the attempted robber in a photographic lineup. On this record, a preponderance of the evidence established that Pettway had committed an attempted robbery, as defined by Alabama law, Ala. Code §§ 13A-4-2(a), 13A-8-43(a)(2), 13-A-41(a)(1), and thus supported the court's decision to apply the cross-reference to the robbery guideline for purposes of applying its higher base offense level. We affirm as to this issue as well.

## IV.

We are also unconvinced by Pettway's claim that his upward-variance sentence was substantively unreasonable. In reviewing the substantive reasonableness of a sentence, we consider "the totality of the circumstances, including the extent of any variance from the Guidelines range." *Gall*, 552 U.S. at 51. We will not substitute our own judgment for that of the district court and will "affirm a sentence so long as the court's decision was in the ballpark of permissible outcomes," even if we were to reach a different conclusion. *United States v. Butler*, 39 F.4th 1349, 1355 (11th Cir. 2022) (quotations omitted); *United States v. Lyons*, 403 F.3d 1248, 1255 (11th Cir. 2005).

Under § 3553(a), the district court must impose a sentence that is sufficient, but not greater than necessary, to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, and protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a). In addition, the court must consider, among other factors, the nature and circumstances of the offense, the history and characteristics of the defendant, and the need to avoid unwarranted sentencing disparities among similarly situated defendants. *Id.* The court imposes a substantively unreasonable sentence when it "(1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *Butler*, 39 F.4th at 1355 (quotations omitted). The court "commits a clear error of judgment when it weighs the § 3553(a) sentencing factors unreasonably." *Id.* The party challenging the sentence bears the burden to show that it is unreasonable in light of the record and the § 3553(a) factors. *United States v. Pugh*, 515 F.3d 1179, 1189 (11th Cir. 2008).

Although the district court is required to consider all relevant § 3553(a) factors, "the weight given to each factor is committed to the sound discretion of the district court," and the court may attach great weight to one factor over the others. *Id.* Further, the court's "failure to discuss mitigating evidence does not indicate that the court erroneously ignored or failed to consider the evidence." *Id.* at 1356 (quotations omitted and alterations adopted). Thus, the court is not required to state on the record that is has explicitly

considered each § 3553(a) factor or to discuss each § 3553(a) factor, but instead should set forth enough information to satisfy the reviewing court that it considered the parties' arguments and has a reasoned basis for making its decision. *United States v. Kuhlman*, 711 F.3d 1321, 1326 (11th Cir. 2013).

In prior cases, when a district court correctly has calculated the guidelines' range, found that the range did not address adequately the § 3553(a) factors, and did not cite a specific departure provision, we've concluded that the above-guidelines sentence involved a variance rather than a departure. *See, e.g., United States v. Irizarry*, 458 F.3d 1208, 1211–12 (11th Cir. 2006), *aff'd*, 553 U.S. 708 (2008). In addition to the sentencing factors, courts may consider any information relevant to a defendant's background, character, and conduct in imposing a variance. *United States v. Tome*, 611 F.3d 1371, 1379 (11th Cir. 2007). We may not presume that a sentence outside of the calculated guidelines' range is unreasonable, but we consider the extent of the variance in our analysis, since major variances require more significant justifications than minor ones. *United States v. Irey*, 612 F.3d 1160, 1186–87 (11th Cir. 2010) (*en banc*); *Gall*, 552 U.S. at 50–51. A sentence being well below the statutory maximum is indicative of a reasonable sentence. *United States v. Dougherty*, 754 F.3d 1353, 1364 (11th Cir. 2014).

Here, the district court did not abuse its discretion in sentencing Pettway to 180 months of imprisonment. At sentencing, the court began by calculating the guidelines' range to be 100 to 125 months' imprisonment. However, the court found that the

guidelines' range did not adequately capture Pettway's previous criminal history since he had committed more than four violent crimes since the age of 18. It also found that Pettway's case was "outside the normal realm" of a § 922(g)(1) offense because the firearm was previously stolen in a burglary; there was strong reason to believe Pettway knew it was acquired in an unlawful manner; and the evidence was sufficient to "show that Mr. Pettway used this firearm in a way that would not have been justified in any way," especially since he had fired the gun in a city location, putting not just the robbery victim at risk, but others as well. The court summarized that it was imposing a 180-month sentence "because of the defendant's . . . demonstrated dangerousness, to the community on other occasions, in addition to what I find on this occasion. But I think his previous dangerousness to the community alone would justify this sentence." The court added that the sentence addressed the seriousness of the offense, and the need for punishment, deterrence, and incapacitation.

On this record, the court amply supported its upward-variance 180-month sentence.[1] Indeed, it was well within the district court's discretion to conclude that the guidelines did not adequately capture his criminal history, since there were prior convictions for which Pettway received no criminal-history points. The court also explained that based on many of the § 3553(a) factors --

---

[1] Even though Pettway called the above-guidelines sentence an upward "departure," no departure provision was cited, and, thus, we construe his sentence as involving a variance. *Irizarry*, 458 F.3d at 1211–12.

including the defendant's characteristics, the seriousness of the offense, and the need for punishment, deterrence, and incapacitation -- the sentence was justified, even independent of the demonstrated dangerousness of the attempted robbery.  And even if the district court heavily emphasized Pettway's dangerousness and violent past, a court may attach great weight to one factor over the others, this factor was not an improper or irrelevant factor, and it did not unreasonably balance this factor against the others.  Therefore, we cannot say that the sentence was substantively unreasonable, nor that the court abused its discretion in sentencing Pettway to a term of 180 months' imprisonment.

## V.

Finally, we reject Pettway's argument that § 922(g)(1) is unconstitutional, both facially and as applied, under the Second Amendment.  The Second Amendment provides that, "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  U.S. Const. amend. II.  Section 922(g) prohibits anyone who has been convicted of a felony from possessing a firearm or ammunition.  18 U.S.C. § 922(g)(1).

In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court considered a Second Amendment challenge to a D.C. law that barred the private possession of handguns in homes.  *Id.* at 574–75.  After considering both the text and history of the Second Amendment, the Court concluded that it conferred on an individual a right to keep and bear arms.  *Id.* at 595.  The Supreme

Court ultimately held that the ban on handgun possession in the home violated the Second Amendment. *Id.* at 635. However, the Court acknowledged that the Second Amendment right to keep and bear arms was "not unlimited," emphasizing that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill." *Id.* at 626. The Supreme Court labeled these restrictions as "presumptively lawful." *Id.* at 627 n.26. It specifically ruled that the District of Columbia had to allow Heller to carry his handgun in his home, "[a]ssuming that Heller [was] not disqualified from the exercise of Second Amendment rights[.]" *Id.* at 635.

After *Heller*, we considered, and rejected, a constitutional challenge to § 922(g)(1)'s prohibition on felons possessing firearms. *See United States v. Rozier*, 598 F.3d 768, 770–71 (11th Cir. 2010). "[T]he first question to be asked" under *Heller*, we explained, was "whether one is *qualified* to possess a firearm." *Id.* at 770. We observed that *Heller*'s clarification that it should not be read to cast doubt on prohibitions on possession of firearms by felons "suggest[ed] that statutes disqualifying felons from possessing a firearm under any and all circumstances do not offend the Second Amendment." *Id.* at 771. We also noted that *Heller* recognized that prohibiting felons from possessing firearms was a "presumptively lawful longstanding prohibition." *Id.* (quotations omitted). Therefore, we held that § 922(g)(1) was a constitutional avenue to restrict the Second Amendment rights of convicted felons as a class of people disqualified from possessing firearms. *Id.*

Several years later, the Supreme Court in *N.Y. State Rifle & Pistol Ass'n., Inc. v. Bruen*, 597 U.S. 1 (2022), considered a Second Amendment challenge to New York's gun-licensing regime that limited when a law-abiding citizen could obtain a license to carry a firearm outside the home. *See id.* at 11–13. The Supreme Court recognized that "the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." *Id.* at 10. It explained that, to determine whether a restriction on firearms was constitutional, courts must begin by asking whether the firearm regulation at issue governs conduct that falls within the plain text of the Second Amendment. *Id.* at 17. If the regulation does cover such conduct, the court may uphold it only if the government "affirmatively prove[s] that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 19. *Bruen* emphasized that *Heller* established the correct test for determining the constitutionality of gun restrictions. *See id.* at 39 (applying "*Heller*'s text-and-history standard" to the challenged statute). And, like *Heller*, *Bruen* described Second Amendment rights as extending only to "law-abiding, responsible citizens." *Id.* at 26 (quotations omitted).

In *United States v. Rahimi*, 602 U.S. 680 (2024), the Supreme Court recently considered a Second Amendment challenge to § 922(g)(8), the federal statute that prohibits an individual who is subject to a domestic violence restraining order from possessing a firearm when the order includes a finding that he represents a credible threat to the safety of an intimate partner, a child of that partner, or individual. *Id.* at 684–85. The Supreme Court held that this

firearm restriction was constitutional. *Id.* at 693. It also once again declared that the prohibition on "the possession of firearms by 'felons and the mentally ill' are 'presumptively lawful.'" *Id.* at 699 (quoting *Heller*, 554 U.S. at 626–27 & n.26).

Finally, in *Dubois*, we explained that neither *Bruen* nor *Rahimi* had abrogated our decision in *Rozier*, which upheld the constitutionality of 922(g)(1) under the Second Amendment. *See* 139 F.4th at 891–94.[2] Applying our prior-panel-precedent rule in considering the defendant's Second Amendment challenge to his conviction and sentence under section 922(g)(1), we affirmed, holding that *Rozier* continued to bar Second Amendment challenges to section 922(g)(1) unless and until the Supreme Court offered "clearer instruction." *Id.* at 894. *Rozier*, we made clear, remained binding precedent in this Circuit. *Id.*

As this discussion reveals, our Court has repeatedly considered Second Amendment challenges to § 922(g)(1)'s constitutionality and rejected them. *E.g., id.* Our binding precedent thus dictates that felons may be categorically disqualified from exercising their Second Amendment rights and forecloses Pettway's Second Amendment challenge to § 922(g)(1). *Id.* at 893; *Rozier*, 598 F.3d at

---

[2] We originally issued *Dubois* in March 2024. The Supreme Court released its decision in *Rahimi* in June 2024. Dubois filed a petition for a writ of certiorari, and the Supreme Court vacated the judgment and remanded to this Court for consideration in light of *Rahimi*. *Dubois v. United States*, 145 S. Ct. 1041, 1042 (2025). On remand, we reinstated our previous opinion, holding "that *Rahimi* -- like [*Bruen*] -- did not abrogate our holding in *Rozier* that section 922(g)(1) is constitutional under the Second Amendment." 139 F.4th at 889–90.

771. Accordingly, our prior-precedent rule forecloses Pettway's facial challenge to the constitutionality of § 922(g)(1). *See Kaley*, 579 F.3d at 1255 (holding that a Supreme Court decision must be clearly on point and "actually abrogate or directly conflict with" this Court's decision to overrule precedent under the prior-precedent rule).

As for Pettway's as-applied challenge, § 922(g)(1) did not disqualify Pettway from Second Amendment protection because he was not "responsible," "dangerous," or even because he was not "law-abiding." Rather, the statute disqualifies Pettway because of his status as a felon, and our binding precedent holds that bans on felon firearm possession do not offend the Second Amendment in light of this nation's "longstanding prohibitions on the possession of firearms by felons," regardless of the particular circumstances of any defendant. 18 U.S.C. § 922(g)(1); *Heller*, 554 U.S. at 626; *Rozier*, 598 F.3d at 770–71. Accordingly, we affirm Pettway's conviction under § 922(g)(1).

**AFFIRMED.**