**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 24-11587

Non-Argument Calendar

_____

BILL V. YPSILANTIS,

*Plaintiff-Appellant,*

*versus*

SECRETARY, U.S. DEPARTMENT OF THE TREASURY,
INTERNAL REVENUE SERVICE,

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:22-cv-61514-BB

_____

Before NEWSOM, GRANT, and LUCK, Circuit Judges.

PER CURIAM:

Bill Ypsilantis is a disabled veteran who works for the Internal Revenue Service. He sued the Service under the Rehabilitation

Act of 1973, asserting three claims: (1) disability discrimination; (2) retaliation; and (3) hostile work environment. The district court granted summary judgment for the Service on Ypsilantis's disability-discrimination and retaliation claims. His hostile-work-environment claim went to trial, and the jury returned a verdict for the Service.

Ypsilantis appeals, challenging the district court's summary judgment for the Service and several evidentiary rulings at the trial. Because Ypsilantis failed to challenge each basis for the summary-judgment ruling, and because he failed to show that the district court abused its discretion in ruling on his evidentiary objections at trial, we affirm.

## FACTUAL BACKGROUND

Ypsilantis is a veteran of the United States Navy and has been an agent for the Internal Revenue Service since 2004. His various medical conditions render him ninety percent disabled,[1] so the Service gave him specialized office equipment, including a footrest and an ergonomic chair, mouse, and keyboard. In March 2020, because of the Covid-19 pandemic, the Service emailed its employees that those who had a telework agreement should begin working from home. Later that month, the Service emailed the employees at Ypsilantis's station to say that the office would be closed and that

---

[1] Ypsilantis suffers from multiple sclerosis, radiculopathy, a spinal fusion, a herniated disc, migraine headaches, tinnitus, carpal tunnel syndrome, an ulnar nerve compression condition, and sleep apnea.

all employees with portable work should begin working from home, including those without telework agreements.

After teleworking for about a week, Ypsilantis emailed his direct supervisor to say that he couldn't continue working from home because: (1) he didn't have enough space at his house since his family was home schooling; (2) he didn't want to be liable for documents and equipment that he took home; and (3) he was concerned about the effect working from home might have on his health, given his disability. In the event the Service declined his request to work from the office, Ypsilantis requested leave "until the [p]ost of [d]uty is open and available for me to work at." His supervisor responded that Ypsilantis could exhaust his remaining annual leave, sick leave, and time-worked-credit leave, but that any requests for additional leave were denied. Ypsilantis requested additional sick leave, but that was denied, too.

Ypsilantis looped in his territory manager and continued to request more leave. This time he requested leave to take care of his then-ill son, and the Service granted him leave under the Family and Medical Leave Act until June 2020. When Ypsilantis's leave ran out, he told the Service that he wouldn't be teleworking the next day. The Service told him that, until he "return[ed] to telework," he would be considered absent without leave, which could lead to serious consequences. By mid-September, Ypsilantis had been absent without leave for nearly 400 hours, and the Service sent him an admonishment letter warning that "[f]uture discipline could be severe." Next, in February 2021, the Service warned Ypsilantis of

a proposal to suspend him for two weeks. And in June—almost a year after Ypsilantis first was absent without leave—the Service sent him a "[p]roposal of [r]emoval" saying that it was considering firing him. Finally, in December 2021, the Service sent Ypsilantis two more letters. One informed him the Service was rescinding the proposal of removal. The other instructed him to return to work in person at his duty station, which he did.

## PROCEDURAL HISTORY

Ypsilantis sued the Service, asserting three claims under the Rehabilitation Act. In count one, he alleged that the Service discriminated against him on the basis of his disability when it "denied the requested reasonable accommodations, which resulted in the placement of [Ypsilantis] in an [absent without leave] status for eighteen months." In count two, he alleged that the Service had retaliated against him for requesting accommodations by denying his leave requests, suspending him, designating him absent without leave, and threatening to terminate him. And in count three, he alleged that the Service created a hostile work environment by harassing him because of his disability. As examples of the harassment, Ypsilantis pointed to the Service's denial of his accommodation requests, its decision to pass over him for promotion, and its disciplinary actions against him, including the absent-without-leave designation, the suspension, and the threat of termination.

Ypsilantis and the Service both moved for summary judgment. The district granted the Service's motion in part and denied Ypsilantis's motion. As to count one—for disability discrimination

based on Ypsilantis's denied leave requests—the district court gave two reasons why the Service was entitled to summary judgment: (1) there was "an absence of any link between" Ypsilantis's leave "requests and [his] disabilities"; and (2) "indefinite leave requests [were] unreasonable under controlling law." As to count two—the retaliation claim—the district court also gave two reasons for granting summary judgment for the Service: (1) Ypsilantis's failure "to make a reasonable accommodation request [was] fatal to [his] retaliation claim"; and (2) even "[a]ssuming that [Ypsilantis] could show that he requested a reasonable accommodation," his retaliation claim would still fail because he hadn't "proffer[ed] any evidence, probative or otherwise," to show that the Service's justification for its actions was pretextual. Because the Service's summary-judgment motion did not address the hostile-work-environment claim, that claim proceeded to trial.

At trial, Ypsilantis testified about his family's home life during the Covid-19 pandemic and explained how space constraints made working from home impractical. During its cross-examination of Ypsilantis, the Service sought to introduce photos of his (then-vacant) house.[2] Ypsilantis objected under Federal Rule of Evidence 403, arguing that the photos "would give the jury a false impression of what the interior of the home was during the . . .

---

[2] Before the trial, Ypsilantis had moved out of his house, and the photos were taken after the family's furniture and other belongings were removed.

6                    Opinion of the Court                    24-11587

applicable time frame." The district court overruled the objection and admitted the photos.

Also as part of the trial, Ypsilantis called his territory manager and direct supervisor as witnesses. He asked the territory manager whether the Service had offered Ypsilantis any reasonable accommodations other than the ergonomic office equipment he used at work, and whether employees could take leave as a reasonable accommodation. Ypsilantis asked his supervisor whether weather-and-safety leave could be a reasonable accommodation. The Service objected on relevance grounds, and the district court sustained the objections. The jury returned a verdict for the Service. Ypsilantis appeals the summary judgment for the Service on his disability-discrimination and retaliation claims and the final judgment for the Service on his hostile-work-environment claim.

## STANDARD OF REVIEW

We review de novo a district court's summary judgment. *Jiminez v. United States Att'y Gen.*, 146 F.4th 972, 988 (11th Cir. 2025). And we review for abuse of discretion its evidentiary rulings at trial. *Central Baptist Church of Albany, Georgia, Inc. v. Church Mut. Ins.*, 146 F.4th 1003, 1010 (11th Cir. 2025).

## DISCUSSION

Ypsilantis makes two arguments on appeal. First, he argues that the district court erred in granting summary judgment for the Service on his disability-discrimination and retaliation claims. Second, he contends that the district court erred in its evidentiary rulings during his trial on the hostile-work-environment claim.

*The district court did not err in granting summary judgment for the Service on the disability-discrimination and retaliation claims.*

The district court granted summary judgment for the Service on two independent grounds as to both the disability-discrimination and retaliation claims. As to the disability-discrimination claim, the district court concluded that (1) Ypsilantis hadn't linked his requested accommodation to his disability, and (2) his leave requests were not reasonable. As to the retaliation claim, the district court concluded that (1) Ypsilantis hadn't engaged in protected activity, and (2) he hadn't rebutted the Service's proffered justification for its employment actions.

If a district court bases its judgment on "multiple, independent grounds," then an appellant can only succeed on appeal by challenging each ground. *Sapuppo v. Allstate Floridian Ins.*, 739 F.3d 678, 680 (11th Cir. 2014). If an appellant "fails to challenge properly on appeal one of the grounds," then he has abandoned his challenge to that ground, and we must affirm. *Id.*

Ypsilantis argues that the district court erred in granting summary judgment for the Service on his disability-discrimination and retaliation claims. But he challenges only one of the district court's two bases as to each. As to the disability-discrimination claim, he contends that "a request for a leave of absence," standing alone, "can indeed constitute a proper request for a reasonable accommodation." As to the retaliation claim, he maintains that, even if his requested leave was not a reasonable accommodation, he had a good-faith basis to believe it was, which was sufficient for the

requests to qualify as protected activity.  But Ypsilantis does not challenge the district court's conclusion as to his disability-discrimination claim that he failed to link the requests to his disability, or its ruling as to his retaliation claim that he failed to show the Service's justification for its employment actions was pretextual.  Because he has not challenged every basis for the summary judgment, we must affirm the district court as to each claim.  *See id.*

Ypsilantis's reply brief does include a footnote with a passing reference to the district court's alternative ground as to the retaliation claim.  But arguments raised for the first time in a reply brief are too late.  *Id.* at 683.  And we do not consider arguments raised "only in a footnote in a perfunctory and conclusory manner." *Nat'l Mining Ass'n v. United Steel Workers*, 985 F.3d 1309, 1327 n.16 (11th Cir. 2021).  So, we cannot review the district court's retaliation ruling.

*The district court did not err in its evidentiary rulings.*

As to the hostile-work-environment claim, Ypsilantis argues that the district court erred both by admitting and excluding evidence it should not have.[3]  It erred, he contends, by admitting photos of his vacant former residence.  And it erred by excluding

---

[3] We have not yet decided whether the Rehabilitation Act can support a hostile-work-environment claim. *Mullin v. Sec'y, U.S. Dep't of Veterans Affs.*, 149 F.4th 1244 (11th Cir. 2025).  Because the Service didn't raise the issue, we assume without deciding that such a claim is cognizable under the Act.

testimony Ypsilantis said would have shown the Service's discriminatory intent. We address each contention in turn.

### 1. The admission of the Service's evidence

Ypsilantis argues that the district court abused its discretion by allowing the Service to introduce photos of his then-vacant home, which he says were "undoubtedly quite prejudicial."

Under rule 403, district courts may exclude relevant evidence "if its probative value is substantially outweighed" by a harmful effect, such as "undue prejudice, confusing the issues," or "misleading the jury." As we've said, the terms of rule 403 create a "strong presumption in favor of admissibility." *United States v. Cenephat*, 115 F.4th 1359, 1365 (11th Cir. 2024) (quoting *United States v. Church*, 955 F.2d 688, 703 (11th Cir. 1992)); *see also United States v. McGregor*, 960 F.3d 1319, 1324 (11th Cir. 2020) (explaining courts applying the rule should "look at the evidence in a light most favorable to admission").

The district court didn't abuse its discretion by admitting the photos. The probative value of the photos was significant. Ypsilantis testified that space constraints prevented his working from home, and the Service offered the photos to rebut his testimony. The photos went to the heart of Ypsilantis's claim that the Service created a hostile work environment by requiring him to work from home. Any risk of jury confusion or prejudice to Ypsilantis did not outweigh that probative value. On both cross and redirect examination, Ypsilantis testified that the photos did not show the furniture that had been in the house when he lived there. And he added

that the photos appeared to be taken with a fisheye lens that could make the space look larger than it was.  This added context mitigated any chance of jury confusion or prejudice.

### 2. The exclusion of Ypsilantis's evidence

Ypsilantis also argues that the district court abused its discretion by excluding as irrelevant four categories of evidence he sought to introduce.  Specifically, he says the district court wrongly excluded testimony about: (1) whether the Service offered Ypsilantis "other alternative accommodations"; (2) whether a leave of absence can be a reasonable accommodation under the Rehabilitation Act; (3) whether the Service "failed to use available medical evidence to ensure the prompt return of [Ypsilantis] to the workplace"; and (4) whether weather-and-safety leave can be a reasonable accommodation under the Rehabilitation Act.

"Irrelevant evidence is not admissible."  Fed. R. Evid. 402. Evidence is irrelevant unless it tends to make a fact more or less probable and that fact "is of consequence in determining the action." *Id*. R. 401.  A district court "enjoys 'considerable leeway' in making evidentiary decisions." *Erickson v. First Advantage Background Servs. Corp.*, 981 F.3d 1246, 1250 (11th Cir. 2020) (quoting *United States v. Frazier*, 387 F.3d 1244, 1258 (11th Cir. 2004) (en banc)).  The district court's determinations on admissibility will be upheld unless they are "manifestly erroneous." *Frazier*, 387 F.3d at 1259.

To succeed on his hostile-work-environment claim, Ypsilantis had to show five things:  (1) "he 'belong[ed] to a protected

group'; (2) he was 'subject to unwelcome harassment'; (3) the harassment was 'based on a protected characteristic'; (4) the harassment was 'sufficiently severe or pervasive to alter the conditions of' his employment; and (5) his employer was 'responsible for' the hostile work environment." *See Copeland v. Georgia Dep't of Corr.*, 97 F.4th 766, 774–75 (11th Cir. 2024) (quoting *Bryant v. Jones*, 575 F.3d 1281, 1296 (11th Cir. 2009)). Ypsilantis argues that each category of evidence he identified would've helped establish "discriminatory intent by management," which he calls a "critical element of proof in a discrimination case." We disagree.

First, the district court did not abuse its discretion by excluding evidence of whether the Service offered Ypsilantis any alternative accommodations other than his ergonomic office equipment. Whether the Service had offered Ypsilantis any other accommodations under the Rehabilitation Act was not relevant to the hostile-work-environment analysis. The number of accommodations Ypsilantis was offered did not make it more or less likely that the Service subjected him to harassment sufficiently severe and pervasive to alter the conditions of his employment, nor did it go to any other element of the hostile-work-environment claim.

Second, the district court did not abuse its discretion by excluding evidence about whether a leave of absence can be a reasonable accommodation. This broad question was not relevant to Ypsilantis's claim because Ypsilantis did not request a traditional time-limited leave of absence. Ypsilantis asked for indefinite leave, which we have held is not a reasonable accommodation. *See Wood*

*v. Green*, 323 F.3d 1309, 1314 (11th Cir. 2003) (explaining that, "while a leave of absence might be a reasonable accommodation in some cases," a request for "indefinite leaves of absence" contemplating a return to work "at some uncertain point in the future" was not reasonable). So, to the extent he sought to prove his hostile-work-environment claim with evidence that the Service had denied him reasonable accommodations, his general question about a leave of absence was beside the point.

Third, the district court did not exclude evidence about "whether the [Service] failed to use available medical evidence to ensure the prompt return of [Ypsilantis] to the workplace." Ypsilantis never offered any such evidence.[4] Thus, there was nothing to exclude.

And fourth, the district court did not abuse its discretion by excluding evidence about whether weather-and-safety leave could constitute a reasonable accommodation. His question about weather-and-safety leave wasn't relevant because he didn't ask for traditional time-limited weather-and-safety leave. Ypsilantis requested indefinite leave of absence, which we have held is not a reasonable accommodation. *Id.* So, whether the traditional kind

---

[4] Ypsilantis does point to a question his counsel asked his territory manager at trial: "And would you agree with me that it took management from June 2021 to December 2021 to initiate an exception?" The "exception" referenced the Service's allowing Ypsilantis to return to work in person. But the question says nothing about available medical evidence.

24-11587                Opinion of the Court                    13

of weather-and-safety leave was available was irrelevant to Ypsilantis's hostile-work-environment claim.

**AFFIRMED.**